## Michael Zenor *v.* Parish of Concordia.

The Police Jury of the parish of Concordia had a right to locate the levee on its present site ; a reasonable regard for the public safety required it, and therefore the plaintiff has no right to complain. *Salus populi suprema lex est* is the rule.

APPEAL from the District Court of Concordia. This was a trial by jury. *Farrar*, J., presiding. *Stacy* and *Sparrow*, for plaintiff. *H. B. Shaw*, for defendants. By the court :

Preston, J. In this State, so much exposed to ruinous inundations, the public have the undoubted right, on the shores of the Mississippi river, to the use of the space of ground necessary for the making and repairing of the public levees and roads. C. C. art. 661. It was the condition of the ancient grants of land on the Mississippi river, and sufficient depth was always given to each tract, to prevent the exercise of the public rights from proving ruinous to the individual.

Speculation and other motives have, in later times, caused the division and sale of some tracts, and entries of others, with large fronts and little depth, in opposition to the general policy of the country. Thus, in the present case, the plaintiff has scarcely any depth, with a large front, in a deep bend with a caving bank. The policy of the country and the laws of the land, made for the general safety, cannot yield to cases of individual hardship. Those who purchase and own the front on the Mississippi river, gain all that is made by alluvian, and lose all that is carried away by abrasion. And those who choose to purchase tracts with little depth, in caving bends, expose themselves, knowingly, to total loss, and must suffer the consequences when they occur. They suffer *damnum absque injuria.*

The parish of Concordia has been peculiarly exposed to inundation, and therefore the Legislature excepted that parish from the general levee law, passed in 1829. and by the 62d section of the act declared, that the police jury of the parish should have plenary and unlimited powers to make such enactments with regard to roads and levees, within their respective limits, as may be deemed necessary and proper by that body. Bul. and Cur. 760.

In 1848 and 1849 the police jury, in pursuance of these powers, caused to be constructed, in the bend just above and opposite Ellis' Cliffs, a levee 4 or 500 yards from the bank of the river. It was located by the inspector of levees, and made in pursuance of his recommendation, in these words : " Its position, with reference to the land owners, can be seen by reference to the map. It will be seen that *Messrs. Nelson, Zenor* and *Hamilton*, are the principal sufferers, but this could not be avoided without sacrificing the public good to individual interest. The distance of the levee, from the river, is 430 to 650 yards. It is estimated, from observation of the encroachments of the river at this point, that the proposed levee will remain at least twenty years. When we add to this the importance, nay, the indispensable necessity of such a levee, and the vast interest to be protected thereby, it is hoped your honorable body cannot long hesitate to devise some means to secure the parish from a general overflow, which I cannot but regard as inevitable in ordinary seasons of high water."

The levee cost the parish from twenty to thirty thousand dollars. No witness says it was unnecessary. All who express an opinion, concur that it is not at an unreasonable distance from the river, considering the history of that part of its bank, and its badly caving character.

If we were convinced, by the evidence, that the police jury had exercised their plenary power in an arbitrary or oppressive manner, we would not hesitate to sanction judicial power in restraining it, as was done in the case of *Dufresne* v. *Haydel* and others.

But the evidence satisfies us, that the levee constructed by the defendants was indispensable to the public safety. That the location of it nearer the river, considering the extremely caving character of the bank, would not have justified the large expenditure of upwards of twenty thousand dollars, which the parish was obliged to incur, for this public protection. That the levee proposed in 1847, but never executed by the police jury, was injudiciously located, as proved, among other things, by the fact that seventy yards of it had already fallen in the river, and therefore was properly abandoned, and can have no influence upon this suit. The police jury had a right to fix on the present location, and a reasonable regard for the public safety required it, and therefore the plaintiff has no right to complain. *Salus populi suprema lex est* is the rule, and in the exercise of it, individuals can claim indemnification only when they are able to show, clearly, that they have been deprived of their rights. It is not shown in this case, and we think there should be judgment for the defendants.

The judgment of the district court is reversed, and that there be judgment in favor of the defendants, the plaintiff to pay the costs in both courts.