No. 11,200.

ELIZABETH PEART AND HUSBAND VS. JOS. H. MEEKER, PRESIDENT OF THE RED RIVER, ATCHAFALAYA AND BAYOU BŒUF LEVEE DISTRICT.

1. Repeated decisions have settled the law of Louisiana to the following effect: that under Art. 665 of the Civil Code, riparian property on navigable rivers is subject to a servitude or easement imposed by law for the public utility, authorizing the State, under proper laws, to appropriate the space required for the making of levees and roads; that, in locating and building levees, the State does not expropriate property, but lawfully appropriates it to a use to which it is subject under the title itself; that in so doing she acts, not under the power of eminent domain, but in the exercise of her police power; that laws, constitutional or statutory, concerning expropriation of property and requiring compensation therefor, have no application to property legitimately taken for levee purposes; and that private injury resulting therefrom is *damnum absque injuria.*

2. The statute constituting the defendant levee district expressly dedicates all its funds exclusively to drainage and levee construction; authorizes it to construct only such levees as are approved by the State Board of Engineers, devolves on the State Engineers the exclusive authority and duty to locate levees, and charges them with all the responsibility for such location.

3. The defendant commissioners, having built its levee on the line located by the State Engineers, have only performed the plain duty imposed on them by law, and can not be held in damages by a citizen claiming to be injured thereby. If there has been fault it was committed by the State Engineers. The corporate funds could, in no event, be diverted from the public purposes to which they are exclusively dedicated by law. The commissioners, if desirous to do so, could not appropriate them to payment of such damages without violating the law, and judicial power can not be invoked to compel them to violate the law.

4. The law being valid, no acts of officers within the authority conferred can give rise to any legal damage; and if they have acted without and beyond such authority, their acts are not binding on their principal, which is a mere functionary of the State, and any liability incurred must be personal.

5. Whatever remedy the plaintiff may have had to prevent unlawful action by these officers it can not take the shape of an action for damages against this corporation, which is the only question here involved.

APPEAL from the Tenth District Court, Parish of Rapides. Coco, J.

*R. J. Bowman* for Plaintiffs and Appellees.

*White & Thornton* for Defendants and Appellants.

The opinion of the court was delivered by

FENNER, J.   This is a suit to recover damages resulting to plaintiff from the act of the defendant corporation in locating and constructing a line of levee on Red river in such manner as to leave her property outside of the levee, exposed to overflow and rendered unfit for cultivation by reason not only of such exposure but also by the consequent obstruction of her drainage.

She alleges that the levee might have been otherwise located with equal protection to the public safety, without the sacrifice of her property, along a different line which she pointed out to defendant, but that, notwithstanding her timely protest, the defendant persisted in adhering to the line adopted, and inflicted upon her unnecessary damage, for which it should be held responsible.

The defendant answers by general denial, coupled with the special defence that the levee was constructed on the line surveyed and located by the State Board of Engineers, and that defendant is not responsible for any resulting damage.

The plaintiff did not apply for any preliminary injunction, but asked for a final judgment enjoining the defendant from building the levee as located, and, in case the levee should be built before trial of the case, then for a judgment in damages.   The case was tried by a jury, which rendered a verdict in favor of plaintiff for $2750 damages, from which the defendant appeals.

The quantum of damages is admitted between the parties, and the sole question before us is the legal liability of defendant.

Whatever may be the law elsewhere, we consider the law of Louisiana too well settled to admit of further dispute to the following effect: that under Art. 665 of our Civil Code riparian property on navigable rivers in this State is subject to a servitude or easement imposed by law for the public or common utility, authorizing the appropriation by the government, under proper laws, of the space required for the making and repairing of levees, roads and other public works; that the State is charged with the administration of this public servitude; that in locating and building levees she does not expropriate the

property of the citizens, but lawfully appropriates it to a use to which it is subject under the title itself; that in so doing she acts, not under the power of eminent domain, but in the exerc'se of the police power; that laws, constitutional or statutory, concerning the expropriation of private property for public use and requiring adequate compensation therefor, have no application to property legitimately required for levee purposes, and that private injury resulting from the legitimate exercise of this legal right is *damnum absque injuria*, to which the individual must submit as a sacrifice to the public safety and welfare. Ruch vs. City, 43 An. 275; Bass vs. State, 34 An. 494; State vs. Maginnis, 26 An. 558; Cash vs. Whitmore, 13 An. 401; Dubose vs. Commissioners, 11 An. 165; Police Jury vs. Bozeman, 11 An. 94; Zenor vs. Concordia, 7 An. 150.

It is useless to quote from these decisions. They are familiar to the profession, and their tenor, as above stated, is unambiguous, harmonious and emphatic.

They were rendered under the *regime* of constitutions which prohibited the taking of private property for public purposes without compensation, and however broad and emphatic may be the same prohibition in our existing Constitution, it had not either the intention or effect to repeal Article 665 of the Civil Code or to bring within its grasp the lawful appropriation of property for levee purposes. On the contrary, the Constitution itself charges the General Assembly with the duty of maintaining a levee system, authorizes the creation of levee districts under the administration of commissioners to be appointed or elected, and grants specified powers of taxation for this purpose. Const., Arts. 213, 214, 215, 216.

In the execution of these powers and duties the Red River, Atchafalaya and Bayou Boeuf Levee District was created by Act 79 of 1890, amended and re-enacted by Act 46 of 1892, and the defendant commissioners were appointed.

Two sections of the act require special attention.

"SEC. 11. That all moneys arising, or that shall accrue to said district, by taxation or otherwise, shall be held and used *exclusively* for the necessary drainage, and the construction, repair and maintenance of any and all public levees in said district, which, *in the opinion of the Board of State Engineers*, will protect said district from overflow and for payment of salaries," etc.

"SEC. 23. That it shall be the duty of the State Board of En-

gineers to designate one of their number to attend each meeting of the levee board, when previously notified of such meeting, and to report to and advise the board as to the location, construction and repair of all levees, drainage necessary for the protection of the district, and *are hereby authorized to survey and locate, repair or remove or change all levees* or canals for drainage in the district, *and are charged with the responsibility of all such location*, and they shall furnish to the board a detailed report showing the proper location of all levee lines and canals," etc.

The Constitution itself (Art. 214), in authorizing the appointment of commissioners for levee districts, expressly declares that they " shall, *in the method and manner to be provided by law*, have supervision of the erection, repairs and maintenance of the levees in said districts."

These commissioners were therefore bound under an express constitutional mandate to exercise their functions exclusively " in the method and manner" prescribed by law.

The law confined their powers to the construction, maintenance and repair of such levees only as " in the opinion of the Board of State Engineers will protect said levee district from overflow," and further devolves upon the State engineers the exclusive authority and duty " to survey and locate, repair or remove and change all levees," and further charges said engineers with the full " responsibility of all such location." The evidence in the case fully establishes that the levee complained of is built on the line surveyed, located and approved by the State engineers. The defendants did not act hastily or inconsiderately. On the contrary, after being notified of plaintiff's complaint, the president and the State engineer, together, as the latter tells us, " went carefully over the line again, and at the same time went over the line which the plaintiff desired located. " My object," he says, "in doing this, was to see if I could make any modification of my location which would be of benefit to plaintiff and at the same time consistent with safety." The result was that the engineer, for reasons given, adhered to the line adopted and refused to change it.

What was the board to do? The levee was an important one, involving the protection of an extensive region from overflow. Under the mandates of law above referred to, its duty was clear and manifest to build the levee on the line located by the State engineers,

who are charged with the authority, duty and responsibility of making such location.

It is difficult to understand how this corporation can incur liability for performing the plain duty imposed on it by law; or how, in any event, the corporate funds could be used in satisfaction of such liability. It is clear that the commissioners, even if they desired to do so, could not, under Sec. 11, devote the corporate funds to the satisfaction of plaintiff's claim, without violating the law, and the judicial power could not be invoked to compel them to violate the law.

To hold otherwise would be to authorize such officers to create unwarranted debts against this corporation, which is a mere functionary of the State, and, for their payment, to divert public funds from the purposes to which they are lawfully and exclusively dedicated.

Whatever be the rights of plaintiff and whatever be her remedies for their vindication, the latter can not possibly take the shape of an action of damages against this corporation.

The law under which the officers of this corporation and the State engineers have acted is a valid law, and nothing done in the proper execution of its mandates can give rise to any action of damages. If such an action exists it must arise from acts of these officers in violation of the authority conferred upon them. This brings the case within the dilemma propounded in Bass' case, where we said: "The dilemma seems irresistible; either the Board of Engineers, the public agents of the State, have acted within the scope of their mandate and authority, or they have not. If they have, then, as they have carried out a valid law, neither they nor the State can be held responsible. If they have acted beyond that scope, their principal can not be made responsible for their unauthorized act, and they alone are chargeable." Bass vs. State, 34 An. 494.

For the reasons heretofore indicated, we think the corporate liability of this levee district is governed by the same rules which apply to the State herself. If there is any liability for damages, it rests on the officers individually who have acted in excess of their authority, and under the law in this case, which we have heretofore quoted, it seems quite clear that, as between these commissioners and the State engineers, the latter alone would be charged with whatever responsibility might result from the improper location of levees.

We need not advert to the strong shield of protection which the law extends over public officers charged with discretionary duties and which exempts them from liability for honest errors, and except in clear cases of oppression and injustice; and it is only proper to say that nothing in this record indicates any but honest motives and conscientious action on the part of all the public officers concerned.

It is undoubtedly the duty of public officers charged by the State with the execution of its police power to make no greater sacrifice of private rights than the public welfare demands. In several cases this court has said that the power so conferred is not arbitrary, and that the citizen is not without remedy to subject it to judicial control in proper cases. We are not called upon in this case to consider this question further than to say that the present action of damages against this levee district is not an appropriate remedy, and can not be sustained.

It is therefore decreed that the judgment appealed from be reversed, and that plaintiff's demands be rejected, at her costs in both courts.