The opinion of the court was delivered by
Parlange, J.
This is an injunction suit to restrain the construction of a dam across Bayou Pierre.
Plaintiff owns a plantation in Caddo parish, known as Grigsby’s Island, and which is bounded on one side by Red river and on the other sides by bayous or streams connecting with Red river. Bayou Pierre bounds her plantation in the rear. She complains that A. *1359 Hart, and H. B. Richardson, pretending to act as chief engineer of the Board of State Engineers, and F. M. Kerr, pretending to act as engineer of said board, have combined and conspired to build a dam across Bayou Pierre at a distance of about one mile and a half from ' Red river, and of about a quarter of a mile from the lowest point of - her land. She alleges that the defendants have announced their intention to close Bayou Pierre, and have actually begun the work necessary to carry out their purpose. She alleges that the defend- • ant Hart was employed almost wholly by private persons to do said work. That the necessary funds were supplied by interested private parties who, for their own selfish interests and from no public motive, have entered into the combination to dam said bayou. That any pre- ■ tended contract between Hart and the State is a mere pretext or subterfuge and was intended as a cloak to cover their illegal acts, and-with the hope to shield themselves from the legal consequences of' their wrongful acts. She avers specially that, if the acts of defendants are claimed to be done by virtue of any contract with the State - or its officials, and in accordance with law, the Board of Engineers has no power to close such a natural outlet as Bayou Pierre is, and she says that since the passage of Act 74 of 1892 the Board of Engineers is without power to advertise for bids and to let contracts for building public levees in Oaddo parish and for closing Bayou Pierre; but that said power is lodged exclusively in the Board of Commissioners of the Oaddo Levee District, and that, if the Board of Engineers has let a contract for closing Bayou Pierre since the passage of Act 74 of 1892, it has done so without authority from the district commissioners. That, if the authority is claimed under See. 18 of Act 74 of 1892, said section is unconstitutional.
Plaintiff avers that the effect of closing Bayou Pierre will be to increase the volume of water in Red river, thereby rendering her lands more liable to overflow and requiring her to add to her own levees already built. That she will be compelled to surround her plantation with high levees, costly to maintain and which would leave her plantation as a basin in which rain and seepage water would stand. She - alleges damages to the amount of $6000, of which $1000 are claimed for attorneys’ fees and $5000 for the depreciation in the rental and selling values of her plantation and the disturbance of her tenants and laborers. She prays for the damages claimed and for the removal of the dam.
*1360 By an amended petition, plaintiff avers that Bayon Pierre is a navigable stream, and that the State has no power to close it.
The State intervened and alleges that the work enjoined is a part of its public levee system. That the Board of State Engineers, in the discharge of its duties, recommended the closing of Bayou Pierre and the continuation of a public levee from the hills north of and across Bayou Pierre to the Dixie plantation, a distance of two miles and three-quarters, in order to protect the adjacent country from overflow, and as a basis of a system of levees to be built as rapidly as possible; that bids for said public work were advertised for according to law; that the bid of the defendant Hart was duly accepted, and a contract was made with him by the Governor; and that Hart gave bond and security for the faithful performance of the work; that the contract price is payable out of the general engineer fund, over which the District Board of Commissioners has no control, and that the Board of State Engineers has the power, under the laws of the State, and especially under Act 60 of 1886, to determine in what part of Caddo parish its pro rata of said fund should be expended; that said Board of Engineers has the exclusive power of locating all levees in the Caddo Levee District, and of determining what outlets shall be closed or opened; that such power was not abridged by Act 74 of 1892, but, on the contrary, was made exclusive by Sec. 18 of said act; that said act makes it the duty of said Caddo District Levee Board to provide the means to carry out the recommendations of said Board of Engineers by taxation, but that these means are intended to be in aid of the general engineer fund.
The injunction was dissolved on bond.
Defendants answered, making substantially the same averments as the State.
After trial'the district judge dissolved the injunction and dismissed the suit, condemning plaintiff to pay the defendant Hart $850 as damages, of which $250 are for attorneys’ fees.
.Plaintiff has appealed, and the defendant Hart, in his answer to the appeal, prays that the attorneys’ fees be increased to $1000.
Plaintiff’s allegations that the closing of Bayou Pierre is the result of a combination and conspiracy for private interests are clearly and abundantly disproved by the record. The work complained of is a public work undertaken, in accordance with law, by the agents of the State, the State Engineers. It is a part of the public levee sys *1361 tern of the State. It was being carried on by the State Engineers in the performance of the duties imposed upon them by law. The work was surveyed; it was reported and recommended to the Governor. The Governor advertised for proposals to do the work. The contract was awarded to Hart, and was signed by the Governor and by Hart. The latter gave security for the performance of the work. In is clear that no possible damage |could have resulted to plaintiff from the mode in which Hart obtained the contract, and that if she. has suffered any injury it was not because of the mode of awarding the contract but because of the acts done under the same.
This is not a case in which a requirement of law provided in the ' interest of a person has not been observed.
The fact that private persons bound themselves to the contractor, Hart to supplement by subscriptions of money the price which he was to receive from the State affects in no manner the public character of the work. These were obligations of third parties to Hart. They did not and could not affect in the least the control of the State over the work, nor change, nor impair the public nature of the undertaking. The State was the beneficiary of these private subscriptions, as doubtless they contributed to enable Hart to undertake the building of nearly three miles of levees for the low price set out in his contract with the State. But the work itself remained absolutely a public work.
Speaking of the nature of the work the district judge says:
“ It is a public work, planned and Ideated by State authority, and is a part of a system of levees ordered by the State for the prevention of overflows. It is the initial point of a line of levees, the propriety, location and construction of which have been determined by the State, acting through the State Board of Engineers, its accredited and duly authorized agents. It begins on the highlands on the west bank of the bayou and extends thence across the bayou to Hart’s Island, and from there to Dixie plantation on Red river.”
The United States Government has contributed $4000 — a sum equal to the price of Hart’s contract with the State — toward the cost of construction of the line of levees, of which the dam in question is a part. Manifestly the claim that such a work, undertaken by the State with the aid of the general government, is the work of private persons for private and selfish motives is absolutely without foundation.
*1362 Plaintiff contends, as stated, that since the passage of Act 74 of 1892, which created the Caddo Levee District, the right and power to advertise and contract for levees in Caddo parish are exclusively vested jn the District Board of Commissioners. This position is untenable. There is no authority to support it. The Constitution makes it the imperative duty of the General Assembly to maintain a levee system in the State. Art. 214 of the Constitution provides that the General Assembly may divide the State into levee districts, and provide for the appointment or election of levee commissioners,, who shall, in the mode and manner to be provided by law, have supervision of the erection, repairs and maintenance of the levees in the district, and to that effect they may levy a limited tax on the taxable property within the district. It is clear that the creation of' levee districts is left to the discretion of the General Assembly. It-is equally clear that the method and manner in which the commissioners when created are to have supervision of the levees within the district are also left to the discretion of the General Assembly. Peart vs. Levee District, 45 An. 422.
A levee district is one of the instrumentalities which the General Assembly may use in performing its duty of maintaining a levee system in the State. The Constitution does not provide, either expressly or by implication, that when a levee district is created, the-General Assembly shall be powerless to employ any other instrumentality than that of the levee district within its limits.
The general engineer fund, created by Act 33 of 1879, has been frequently and fully recognized by the General Assembly since the-adoption of the present Constitution. Under Act 33 of 1879 the power of the Governor is clear to contiact for building levees with moneys in the general engineer fund.
Equally clear is the power of the Board of State Engineers, acting-within their official scope and duty, to cause to be closed the bayou across which the dam in question was being constructed at the time this suit originated. It is a necessary incident of their powers and-duties under said Act 33 of 1879. The action of the General Assembly would have been futile indeed if, with full knowledge of the-topography of the State, it had charged the State Engineers with the great duty of protecting the alluvial part of the State from overflows, but had withheld from them the power to build levees across bayous and sloughs. Act 78 of 1886 assumes as a matter of course *1363 that the Board of State Engineers has-the power, and said act provides certain requisites to be observed in constructing levees across bayous and sloughs. But in the instant case, it any doubt could have existed as to the power, Sec. 18 of Act 74 of 1892 creating the Oaddo Levee District would have removed it, by providing that the State Engineers are authorized “ to survey and locate, repair or remove or change any and all levees in the district and are specially authorized to cause to be closed by levees, dikes or otherwise, such outlets, bayous, or sloughs, or to open the same, as in their judgment may be necessary to carry out the object of this act, and are solely charged with the responsibility of the location of all levees in said district.” This section violates no provision of the Constitution.
As to plaintiff’s' contention that Bayou Pierre is a navigable stream, we have carefully considered the voluminous testimony on that part of the case and’ we are clear that the upper part of Bayou Pierre, in which the dam in questien is situated, is not navigable, and that the navigation of even the' lower part of Bayou Pierre, a considerable distance below the dam, is attended with many obstacles and difficulties. On this point the district judge says: “ Prom Grand Ecore where it (Bayou Pierre) enters Red river, to a point some miles below its junction with Tone’s Bayou — a stream flowing out of the river — Bayou Pierre has been frequently navigated by steamboats. But from the point of junction to the dam in question, it has never been navigated and is unnavigable. Between these two points it is nothing but a high water outlet, going dry every summer at many places, choked with rafts and filled with sand, reefs, etc. It has no channel; in various localities it spreads out into shallow lakes and over a wide expanse of country and is susceptible of being made navigable just as a ditch could be if it were dug deep and wide enough and kept supplied with a sufficiency of water.’’ We fully concur in this finding. Besides, Bayou Pierre is wholly within the State, and the authority of the Legislature over it is complete. Hamilton vs. R. R. Co., 34 An. 975; Boykin vs. Shaffer, 13 An. 129.
There is no force in plaintiff’s contention that the act of Congress admitting Louisiana into- the Union forbids the General Assembly from closing by a dam such a stream as Bayou Pierre. Boykin vs. Shaffer, 13 An. 129; Hamilton vs. R. R., 119 U. S. 285; Williamette Iron Bridge Co. vs. Hatch, 125 U. S. 1.
*1364 In Peart vs. Levee District, quoted above, and in the cases therein cited, this court has said that in locating and building her public levees the State acts in the exercise of the police power “ and that private injury resulting from the legitimate exercise of this legal right is damnum absque injuria, to which the individual must submit as a sacrifice to the public safety and welfare.” The doctrine ap plies to the instant case.
Plaintiff’s plantation is an island surrounded by levees, except where the banks are sufficiently high without them. There is evidence strongly indicating that her plantation is by nature in the shape of a basin, the land sloping on all sides to the centre. However this may be, it seems clear that the condition of her property, even before the building of the dam, must have been highly unfavorable to drainage. Whether the effect of the dam at a distance of a quarter of a mile from her property will be to seriously damage it, is in a great measure conjectural. She has neither alleged nor shown any interest in the navigability of Bayou Pierre. However, whether she has suffered damage or not, she is not entitled to the relief she prays for.
The appellee Hart prays for an increase of the damages awarded, but we see no reason to disturb the finding of the district judge.
Judgment affirmed at plaintiff’s costs.
Rehearing refused.