157 So. 585

**PRUYN v. NELSON BROS. et al.**

**No. 33047.**

Oct. 29, 1934.

Rehearing Denied Nov. 26, 1934.

Dewey J. Sanchez and Fred G. Benton, both of Baton Rouge, for appellant.

Breazeale & Sachse, of Baton Rouge, for appellees Nelson Bros. and John P., Harry B., and Willis Nelson.

Gaston L. Porterie, Atty. Gen., for intervener.

HIGGINS, Justice.

This is a suit by a riparian property owner to secure an injunction against the defend-

ants, Nelson Bros., to restrain them from removing soil from the batture of the Mississippi river and to recover damages for the alleged unlawful removal of the soil and depreciation in the value of the batture, as a result of the excavation.

Nelson Bros. answered, denying liability, and averring that they were authorized under a contract entered into with the United States government to remove soil from the batture for the purpose of enlarging and bringing up to standard grade the levee along the Mississippi river in front of the city of Baton Rouge; that the United States government engineers, the state board of engineers of Louisiana, and the Pontchartrain levee board had designated the batture in question as the place from which the soil was to be taken, in order to construct the said levee; that the said respective authorities were vested with the right to authorize the defendants to make the excavation and take the soil, under the federal law, as well as the laws of the state of Louisiana; that the batture along the Mississippi river was subject to a servitude in favor of the public, whereby the soil could be removed for the purpose of constructing and repairing levees along the Mississippi river; and that the United States government and the Pontchartrain levee board should be called in warranty.

The United States government failed to answer or submit itself to the jurisdiction of the court. The Pontchartrain levee board intervened, joining the defendants as one of the parties interested in the contract and making the same defenses as Nelson Bros.

The district judge declined to grant the injunction, and on the merits dismissed the plaintiff's suit for damages, and the plaintiff has appealed. It is admitted that the excavation has been made and the soil removed and the levee completed, and therefore the injunction feature has passed out of the case, and the only remaining issue is the alleged right of the plaintiff to recover damages.

The record shows that plaintiff is the owner of a tract of land adjoining the Mississippi river, as well as certain riparian rights in the batture of the river. The Pontchartrain levee board is a political subdivision of the state of Louisiana, organized under and by virtue of the laws of this state, particularly Act No. 95 of 1890, as amended.

On October 31, 1933, the United States government entered into a contract with Nelson Bros. for the purpose of reconstructing and bringing up to standard grade the unit of the levee along the Mississippi river in front of the city of Baton Rouge. Section C of the unit was constructed out of soil taken from the batture in question. Two-fifths of this section are within the territorial limits of the Pontchartrain levee board and three-fifths are outside thereof. The batture is wholly within the jurisdiction of the board. The United States' engineers connected with the War Department of the United States government, in carrying out the provisions of the Federal Flood Control Legislation of 1928 (33 USCA §§ 702a to 702m), designed for the purpose of preventing floods or crevasses and also for improving the navigability of the river, to foster interstate commerce, worked out a comprehensive plan for the repairing, reconstructing, and building of the levee along the river's banks up to standard grade. The levee in question is a part of the plan. Be-

fore the contract was let to Nelson Bros. by the United States government through its representatives, the plan of the United States engineers was submitted to the state board of engineers of Louisiana and also to the Pontchartrain levee board, for approval. The plan having been approved, the contract was entered into, which provided that the government would furnish the soil to the contractor, for the purpose of repairing and rebuilding the levee. The map or blueprint in connection with the contract designated the batture in question as the place from which the soil was to be taken. Nelson Bros., with drag-line machines and trucks, removed soil from the batture, within from 25 feet to 40 feet of the water's edge of the river at low stage. The excavation is approximately 1,200 feet long, about 60 feet wide, and from 5 to 15 feet in depth. After the excavating was finished, large ditches were dug from the main trench to the water's edge, in order that the trench might be filled by the deposit from the river during the high-water stage, which occurs annually.

The plaintiff contends: "(1) That the riparian servitude does not exist under the facts of the case, and (2) that if it did exist, it was not exercised in a legal manner or by proper authority."

█ The law is clear that all landed proprietors, whose property is adjacent to a navigable stream, hold it subject to certain conditions imposed for the common utility or public welfare. Dubose v. Levee Commissioners, 11 La. Ann. 165; Zenor v. Parish of Concordia, 7 La. Ann. 150; Cubbins v. Mississippi River Commission, 241 U. S. 351, 36 S. Ct. 671, 60 L. Ed. 1041; Mailhot v. Pugh, 30 La. Ann. 1359; Egan v. Hart, 45 La. Ann. 1358, 14 So. 244; In re Bass v. State, 34 La. Ann. 494.

█ The batture as well as the riparian property along the Mississippi river is subject to a servitude for the building and repairing of levees, and this servitude is in favor of the public. R. C. C. arts. 453 and 665; Bass v. State, 34 La. Ann. 494; Peart v. President of Red River, A. & B. B. Levee District, 45 La. Ann. 421, 12 So. 490; Stevens v. Walker, 15 La. Ann. 577.

Previous to the year 1921, no compensation was due the riparian owner when the servitude was legally exercised on the riparian property, and even now compensation is not due when the servitude is validly exercised on the batture by the proper authority for levee purposes. Const. 1921, art. 16, § 6.

In the case of Mrs. Mattie Mayer v. Board of Commissioners for Caddo Levee District, 177 La. 1119, 150 So. 295, 296, a consideration of the meaning of this section and article of the Constitution was considered, and we said:

" 'Lands and improvements thereon hereafter actually used or destroyed for levees or levee drainage purposes shall be paid for at a price not to exceed the assessed value for the preceding year; provided, this shall not apply to batture, nor to property control of which is vested in the State or any subdivision thereof for the purpose of commerce. * * *

" 'This shall not prevent the appropriation of said property before payment.'

"The law imposes a servitude for the common utility on lands abutting navigable

streams for the construction and repair of levees, roads, and other purposes. Civ. Code, art. 665. The principle recognized by the cited article of the Code is of ancient origin. Morgan v. Livingston, 6 Mart. (O. S.) 19, 235, 236; Ruch v. New Orleans, 43 La. Ann. 275, 9 So. 473; Eldridge v. Trezevant, 160 U. S. 452, 463, 16 S. Ct. 345, 40 L. Ed. 490. * · * *

"Pretermitting reference to article 312 of the Constitutions of 1898 and 1913, which affected the Orleans levee district alone, up to the promulgation of the Constitution of 1921, the public authorities, in taking advantage of the servitude for levee purposes, and in the proper exercise of the police power, upon which power the servitude may be said to rest, paid nothing to the owner of the land for such part of his land as was taken for levee purposes, or for such part as was thrown outside of the levee. Zenor v. Parish of Concordia, 7 La. Ann. 150; Police Jury v. Bozman, 11 La. Ann. 94; Dubose v. Levee Commissioners, 11 La. Ann. 165; Bass v. State, 34 La. Ann. 494; Ruch v. New Orleans, 43 La. Ann. 275, 9 So. 473 (which, though a road case, is applicable in principle); Peart v. Meeker, President of Levee District, 45 La. Ann. 421, 12 So. 490.

"It appears, therefore, from the foregoing, that whatever section 6 of article 16 of the Constitution of 1921 may give to the owner of land, subject to the servitude for levee purposes, is in the nature of a gratuity. It is a payment made by the agency of the state —the levee district—for what already belonged to the state. * * * The Constitutional Convention of 1921 was evidently prompted, in adopting the provision, to lessen, so far as the means of the public author-

ities would permit, the burden of the servitude resting on lands, bordering on navigable streams, and growing out of the necessities of the situation. Care should be taken, therefore, not to carry the spirit of the provision beyond its clear intendment, and thereby render, perhaps, the state unable to discharge its duty of protecting a large part of the public from inundation."

See, also, Egan v. Hart, 45 La. Ann. 1358, 14 So. 244; Dubose v. Levee Commissioners, 11 La. Ann. 165.

■ This servitude is limited only by the reasonableness of its use, and the administrative officers of the state of Louisiana are charged with determining that limit, subject to review by the courts only when oppression or injustice is shown and proved. Dubose v. Levee Commissioners; Egan v. Hart, supra; Wolfe v. Hurley (D. C.) 46 F.(2d) 515.

■ The United States government, through the War Department, represented by the United States engineers, in its program of promoting flood control. navigation, and interstate commerce, is a proper authority to exercise that servitude, particularly where the plan and contract for the erection of the levee have been approved by the Pontchartrain levee board and the state board of engineers. Jenkins v. U. S., 60 Ct. Cl. 23; Id., 273 U. S. 649, 47 S. Ct. 246, 71 L. Ed. 822; Trinityfarm Construction Company v. Grosjean, 291 U. S. 466, 54 S. Ct. 469, 78 L. Ed. 918.

■ The state board of engineers of Louisiana and the Pontchartrain levee board are also legally entitled to exercise that servitude when the batture involved lies within the levee district's territorial limits, even though

a portion of the batture taken is to be used beyond the limits of the Pontchartrain levee district by the federal government, when such use is for the benefit of the said levee district.

██ The federal government, the state of Louisiana, and the Pontchartrain levee board, having the right to exercise the servitude, must necessarily do so through their duly authorized representatives. The federal government was represented by the United States engineers from the War Department, the state of Louisiana was represented by the board of state engineers, and the levee board was represented by its president and the members of the board, and they jointly designated the batture in question as the place from which the soil could be taken. The contractor, Nelson Bros., did not take the soil for personal or for private use, but for the federal government, the state of Louisiana, and the Pontchartrain levee board, which agreed to furnish the necessary soil for the construction of the levee, and this was, undoubtedly, for public purposes. The law does not provide that the administrative officers shall follow any particular procedure in exercising the servitude, as in appropriation proceedings. The customary way is to delegate to the contractor the right to remove the soil from the batture. We conclude that the contractor was therefore not a trespasser and had the right under the authority delegated to remove the soil.

██ Did the authorities permit the removal of more soil than was necessary, or confine themselves within reasonable limits as the necessity of the situation required?

The two engineers of the state board of engineers who approved the plan in connection with the letting of the contract testified that they considered the levee in the front of the city of Baton Rouge one of the weakest and most dangerous in that section; that it was not up to the standard grade; that it was not in keeping with the plan of the United States engineers under the flood control legislation of 1928; that the rebuilding of that portion of the levee above and outside of the Pontchartrain levee district was necessary to properly protect the property within the levee district from overflow, in the event of a crevasse; and that the protection levee which ran perpendicular to the river and located south of Baton Rouge, or at the upper end of the Pontchartrain levee district, was not adequate to protect the property in the district from overflow if the main levee gave way during high water, because of certain gaps in the protection levee, and also because it was an old levee and not up to standard.

The only evidence offered to contradict this was the testimony of an engineer of the plaintiff who stated that in his opinion the protection levee was reasonably safe or adequate to protect the property in the levee district from overflow in the event of a crevasse above Baton Rouge.

It appears clear to us that, if the levee along the Mississippi river in front of Baton Rouge was up to standard and safe, the United States engineers would never have let the contract, because, while the levee board had to provide the right of way for the levee under the provisions of sections 2 and 3 of the Flood Control Act, approved May 15, 1928 (Public No. 391—70th Congress, [S. 3740], 45

Stat. 535, 33 USCA §§ 702b, 702c), the United States government bore the full cost of building the levee.

We conclude that it was necessary to take the soil, and that the authorities in the exercise of their right under the servitude did not act arbitrary or unreasonable, but caused to be built a levee of sufficient height and strength to properly protect the public from unnecessary crevasses, and thereby also keep the channel of the river, as far as navigation is concerned, from becoming impaired, and that the most available and suitable soil was used.

Consequently, the taking of the soil from the batture by the contractor, under government authority and supervision, for the purpose of rebuilding the levee, cannot form the basis of an action for damages against the contractor. Manson v. Board Levee Commissioners (La. App.) 153 So. 477.

For the reasons assigned, the judgment appealed from is affirmed.