**GENERAL BOX CO.**
v.
**UNITED STATES.**
Civ. Nos. 2536 and 2804.

United States District Court
W. D. Louisiana,
Alexandria Division.
March 30, 1954.

See also 107 F.Supp. 981.

Fred G. Benton, Baton Rouge, La., Carl C. Chadwick, Natchez, Miss., Barnett, Barnett & Jones, Jackson, Miss., Jackson B. Davis, Shreveport, La., for plaintiff.

T. Fitzhugh Wilson, U. S. Atty., Shreveport, La., Sol B. Pressburg, Alexandria, La., Thompson L. Clarke, Dist. Atty., St. Joseph, La., for defendant.

DAWKINS, District Judge.

A new trial was granted in these cases, and they were subsequently resubmitted on the same record.

On further consideration of the law, the court is now convinced that while the Fifth District Levee Board was not bound to conform strictly to the provisions of Title 19, §§ 1–13 of the LSA–Revised Statutes, dealing with the expropriation of private property, still there had to be *action appropriate to the circumstances,* in which the land or property owner would be given some notice that he was to be deprived of his property. It cannot be overlooked in these consolidated cases that no formal declaration of appropriation was made at the time the Levee Board attempted to authorize the United States Engineers to proceed. All that had taken place, as pointed out in the original opinion, was

an exchange of communications between the Board and the Engineers, of which no property owner had any notice, until the contractor had begun work, and as to this plaintiff, a considerable portion of its timber had been destroyed.

None of the timber was necessary or used in enlarging the levee. It was simply wantonly destroyed in a manner which, admittedly, substantially lessened the cost of enlarging the levee. When the contractor was appealed to, after much of the timber had already been destroyed by bulldozers, to discontinue and allow the owner to salvage what remained, he asserted, in effect, that his bid had been made on the basis of that method of removing the timber, and declined to allow any interference with his operations.

Undoubtedly the powers of the State and Government in dealing with the construction of levees, as construed by the courts of both sovereigns, are very broad, especially in Louisiana under the principles of the Civil Law of Riparian Servitudes. Yet, it is impossible for the writer to conceive that they can be exercised solely through private communications between agents of the two governments and the delegation to a single agent, in the case of the Levee Board, of authority to consummate such an appropriation, and still afford due process of law guaranteed by the Federal Constitution.

In Pruyn v. Nelson Bros., 180 La. 760, 157 So. 585, 587, the plaintiff sought an injunction and the recovery of damages for taking soil from the batture on his riparian front located in the Ponchartrain Levee District, to be used in building a levee outside of that District for the protection of the City of Baton Rouge which was in the jurisdiction of said Board. The complainant sought to make the United States a party, but it declined to submit itself to the jurisdiction of the State Court. The District Court refused to grant the injunction and dismissed the suit. This was affirmed by the Supreme Court of Louisiana, which pointed to the express provi-

sion in the Code authorizing the taking of soil, which in that instance was undisputedly batture, for strengthening the levee. No point was made as to the procedure followed, but simply that Pruyn should be paid for the dirt. As stated, batture was excluded from Art. 16, § 6 of the Constitution of 1921 which was the first concession of any compensation for property used or destroyed in connection with levees or highways on navigable streams. In disposing of the matter however, the court used this significant language:

> "This servitude is limited only by the *reasonableness of its use,* and the administrative officers of the state of Louisiana are charged with determining that limit, subject to review by the courts only *when oppression or injustice is shown and proved.* Dubose v. Levee Commissioners [11 La.Ann. 165]; Egan v. Hart, supra [45 La.Ann. 1358, 14 So. 244]; Wolfe v. Hurley, D.C., 46 F.2d 515." (Emphasis by the writer.)

I am impressed that what was done in the present case amounted to "oppression or injustice". See also Tilden v. United States, D.C., 10 F.Supp. 377.

In Danziger v. United States, D.C., 93 F.Supp. 70, 71, the Levee Board on August 19, 1947, "passed a resolution appropriating the necessary rights of way for * * * Levee Setback * * * on the main stem of the Mississippi River." On October 8th following, the Board revoked said resolution and passed another slightly different. This was done because of certain correspondence with the State and Department of Public Works in August of 1947, and it was stated by the court that what was done had been approved "by all concerned."

The Levee District then set about the physical removal of improvements within the levee right of way, through a contractor and "the United States of America, acting pursuant to the resolution of October 8, 1947, called for sealed bids on the project and awarded construction of the levee" to the successful bidder.

The latter "commenced construction in the month of December, 1947, after removal of all improvements from the levee right of way by the Levee District."

The court found "that the construction was authorized under the Flood Control Act of May 15, 1928, as amended" and that under said Act the district had to agree to maintain "all flood control works after their completion except * * * spillway structures * *." (33 U.S.C.A. § 702c(a) ), and to

> "Provide without cost to the United States, all rights of way for levee foundations and levees on the main stem of the Mississippi River between Cape Girardeau, Missouri, and the Head of the Passes. 33 U.S.C.A. § 702c(c).

> "Under the Act of Congress of June 15, 1936, as amended by the Act of August 18, 1941, the Levee District is entitled to reimbursement by the United States for actual expenditures for the project found by the Chief of Engineers to be reasonable in accordance with local legal procedure or custom. 33 U.S. C.A. § 702a–12(d)."

The court also cited provisions of the Louisiana Civil Code, LSA–C.C. Art. 665, that a servitude was imposed upon the property in question in favor of the public for the construction of levees; Art. 16, § 6 of the Constitution of 1921, fixing the basis of payment of property so taken at the assessed value, and said "there is no formal procedure which levee districts must follow in appropriating property", against citing Pruyn v. Nelson Bros., supra. However, the court in the Danziger case called attention to the fact that it was unlike Tilden v. United States, supra, in that in the latter "there was no resolution by the Levee District appropriating the property"; second, as the Act was then written, it provided for the United States to take title to land and then convey it to the local authorities; and finally, that the rights of way in that case had been appropriated by the Levee District, "not by the United States and there was no

basis for this action against the United States."

■ In the present case, the taking or destruction of the timber was by the United States through its contractor, as to which the Levee Board had no part, other than the correspondence with the Army Engineers. I am still of the opinion that the Levee Board should have acted at least through resolution passed as to this particular property, with notice to all record owners, in order that they might be heard. This would not have prevented the work going forward, but it would have permitted the owners to remove the timber, or at least to undertake through negotiations with either the Levee Board or the Government, or perhaps both, for an opportunity to salvage its property. Any possibility for this hearing, whatever the powers of the Government and the Board might have been, was denied with a consequent substantial loss to plaintiff. It is true that the Board of Engineers called upon the Levee District to furnish rights of way, at least implying that it was to be done without cost to the United States. However, while this was agreed to in correspondence between the two, as heretofore found, neither the Levee Board nor the Government effectively appropriated even that part of the soil necessary to the project which belonged to persons other than plaintiff. It was the Government which took and destroyed complainant's timber thereby creating, in the absence of acquisition of the legal right to do so the implied obligation, as in contract to pay for what it took and destroyed.

It is my view that the holding heretofore made as to liability was correct and the only remaining question is the value of the timber destroyed.

■ I believe, however, that the Government should pay the amount to be awarded in this case, for two reasons, (1) its failure to require of the Levee District an effective appropriation, and (2) under Section 702a–12(d) it would be compelled to "reimburse local authorities (the Levee Board) for actual expenditures * * *". After careful study of the question of the fair value of the timber taken and destroyed, I have decided to accept the figures of the defendant's (Government's) counsel as substantially correct, without going into detailed analysis of the evidence, to wit:

"A. *Excelsior and Home Place.*

"The value established for merchantable timber is $17.00 per thousand feet (18″ in diameter at 16″ from the ground); the value of the timber which would have been merchantable, during the life of plaintiff's contract (under 18″ and at least 12″ in diameter) is $12.00 per thousand.

"There were 219 acres involved in this tract. Of this 219 acres, 164 acres were timbered, according to Mr. Curry. Applying Mr. Mullins' figure of 2500′ of merchantable timber per acre to this acreage, we find the total volume of timber destroyed to be 410 M, using Doyle Log Scale, at a total value of $6,970.00.

"The timber less than 18″ in diameter but at least 12″ in diameter was estimated at 15 trees per acre. These trees would run from 50′ to 80′ per tree, or an average of 65′ per tree. This would equal approximately 1000′ per acre, Doyle Log Scale. The total value of this 164 M at $12.00 per M would be $1,968.00.

"Approximately 220 M board feet was manufactured into lumber. We do not know, from the testimony, whether this came from the timber valued at $17.00 per M or from that valued at $12.00 per M. Using an average value of $14.50 per M, we reach a total value of salvaged timber of $3,190.00.

"Adding the total value of the merchantable timber to that of the timber between 12″ and 18″ in diameter, we get a total of $8,941.00. Taking from this total the value of the salvaged timber, we arrive at the net damage figure of $5,801.00

for the timber destroyed on this tract.

"B. *Roseland Plantation.*

"According to plaintiff's witness Mullins, 100 acres of small cottonwood was destroyed on this tract. The Government witness Curry testified that the acreage was 94. Since we have no per acre valuations in the transcript, the difference in this testimony is not important.

"The only valuations we have on this property is the Mullins estimate of $5,000.00. This estimate is of the value of the timber at the time of destruction. What value, if any, the timber which could not have been cut at the time of destruction had then we do not know.

"Counsel for defendant submit that the value of the timber destroyed on the two tracts at the time it was destroyed was not in excess of $10,801.00."

There should be judgment for the plaintiff in the sum of $10,801. Proper decree should be presented.