TUCKER, Judge.
In this suit the defendant, Scallon Bros. Contractors, Inc., and the intervenor, At-chafalaya Basin Levee District, appealed from the judgment of the trial court granting an injunction prohibiting, restraining and enjoining appellants from taking and removing two and one-half to three acres of soil material from a tract of land comprising a total area of fifty acres conjointly owned by plaintiffs, Priestly Verdun, Lucy Verdun, Sedonia Verdun and Anna V. Davis, for the purpose of repairing a “slide or break” in the levee of the Charenton-Intracoastal Canal, said property being described as follows:
“That certain tract or parcel of land comprising the Estate of Archille and Emma Verdun located near the community of Verdunville being bounded on the North by Cook, on the South by the Bayou Teche, on the West by Lake and on the East by Paul.”
It is conceded by all parties that the tract in question, lying in St. Mary Parish, is riparian to Grand Lake or the Atchafalaya Floodway, and was riparian when the parcel was separated from the sovereign. Also all parties acquiesce to the effect that Grand Lake, the western^ boundary of the property, is navigable, as so held in State v. Cockrell, 162 So.2d 361 (La.App. 1st Cir. 1964), writs refused, 246 La. 343, 164 So.2d 350 (1964).
Under an appropriation resolution of 1934, Intervenor, hereinafter referred to as “Levee Board”, (see evidence, unnumbered exhibit following P. 12 of appeal record) constructed a flood protection levee across plaintiffs’ property, relying on the servi *810 tude provided by C.C. Art. 665. The Levee Board also paid plaintiffs compensation— the assessed value of property for the preceding year, as required by La.Const. (1921) Art. 16, Sec. 6. Levee Board here gave notice of intention to excavate and remove earth, which it contends is within the area appropriated in 1934.
Of the approximate fifty acres in plaintiffs’ tract only 17.2 acres are arable and consequently are devoted to sugar cane cultivation. The portion of the land sought to be taken and appropriated (2i/¿ to 3 acres) comes from plaintiffs’ useable land, which is under cultivation. All of the remaining portion of their land takes the character of swamp and wood land. Therefore, plaintiffs contend they will not only be confronted with the loss of their crops on the land appropriated, but, in addition, they face a reduction in acreage on their sugar cane quota by the U. S. Dept, of Agriculture with the impending result of being unable to make a livelihood from sugar cane cultivation. Plaintiffs allege irreparable injury.
The trial court found as follows: (1) That plaintiffs’ property was subject to the servitude imposed on riparian lands by the provisions of C.C. Art. 665 for the repairs to levee damage; (2) That the evidence adduced on the trial of the case, principally the testimony of the engineer of the U. S. Corps of Engineers, support the reasonableness of the action of the Levee Board, and that, therefore, the Court would not disturb the action of the Levee Board in the absence of palpable abuse of its discretion, or arbitrary and Oapricious exercise thereof ; and (3) that the evidence did not satisfy the Court that the particular land being sought “was contained within the limits of the original servitude created and imposed when the levee was constructed”; and that, “Therefore, although the Levee Board has the right to a servitude over the plaintiffs’ property, and to appropriate plaintiffs' lands for purposes of obtaining earth to repair a levee, they must compensate to plaintiffs in the manner and amount provided by Sec. 16 Art. 6 of the Constitution of 1921; i. e., by paying plaintiffs the assessed value of the land for the previous year”.
The lower court rendered and signed the judgment granting plaintiffs an injunction, and in its reasons for judgment ordered that the injunction continue until such time as payment was made for the land, when such injunction would be recalled and vacated.
This court considers that the trial judge, in his reasons for judgment, with respect to Item (3) hereinabove, where he states that he was not satisfied the subject land was included in the original servitude, in truth and in fact actually intended to express misgivings about the evidence being convincing that this tract of land was included in the 1934 appropriation resolution of the Levee Board. If this is not the meaning intended to be conveyed, an anomalous situation would develop, for without doubt plaintiffs’ land is riparian in nature, and; therefore, admittedly has the servitude imposed upon it by C.C. Art. 665.
Intervenor-Appellant, the Levee Board, cited as errors the following:
(1) That the trial judge did not find that the land presently being sought was within the limits of the original servitude created by said C.C. Art. 665, and imposed when the levee was constructed.
(2) That the Levee Board must pay plaintiffs under Const. Art. 16, Sec. 6, prior to taking the land in question.
Plaintiff-Appellees answered this appeal saying:
(1) Defendant and Intervenor acted without authority and in an arbitrary and capricious manner in trying to take their property.
(2) That Appellees’ property is not within “reasonable necessities” of the sit--uation as required by law.
(3) That no order of appropriation was enacted by Intervenor, and is, therefore, illegal.
*811 (4) Prior appropriation did not vest title in the Intervenor.
(5) And in the alternative that Appel-lees be paid the assessed valuation for the tax year 1969.
As stated hereinabove without dispute, the land is subject to the servitude under C.C. Art. 665 (land is adjacent to navigable river), and also there are nine documentary offerings (see record-unnumbered, and Intervenor’s appeal, pp. 3-4) all of which show that the land here in question is indeed within the servitude area appropriated by the Levee Board in 1934, and that portions of the tract were actually used for construction in 1938 and 1941. Compensation was duly made for this land under the requirements of La.Const. (1921) Art. 16, Sec. 6.
Even though the land in question is burdened with the servitude, there is an absence of showing of any Levee Board resolution of appropriation subsequent to that of 1934.
Plaintiff-appellees, the Verduns, own “50 or more acres”, running from Bayou Teche to Grand Lake (Tr. 39). 17.2 acres are under sugar cane cultivation (Tr. 39). The land not cultivated is in swamps and woodlands (Tr. 40). There is no showing that this land could be made arable. Approximately 2Yz to 3 acres of land is proposed to be taken from the subject tract to repair a levee about 3j/2 miles from this borrow area (Tr. 49).
There is available arable land (farm land) nearer to the slide area and more accessible thereto. Mr. Juneau, Civil Engineer for the U. S. Corps of Engns., New Orleans District, testified there was no “suitable” material closer to the slide than the Verdun property, but he admitted, that his searches for spoil were confined to the area already designated by the red line as being within the purported right of way (Tr. 56).
As an historical background with respect to the instant problems we find that sole legislative source for the riparian servitude is C.C. Art. 665 which is in the tradition of the Spanish law, holding navigable rivers belonged to all men in common, and even the river banks and adjacent lands which belonged to the riparian owners, were subject to a servitude in favor of the public. C.C. Art. 665 has as its counter-part in the French Civil Code, Art. 650. The rules for the exercise of this riparian servitude have not been elaborated for the obvious reason that Spain and France, from which basic law the servitude stems, did not have waterways as those of Louisiana requiring such projection. Louisiana’s own doctrine of riparian servitude has evolved over the past 200 years from the time, when all rural land grants, made under Spanish authority were burdened with a riparian duty, to the present day. It has been a history of constant accommodation of taking under the police power of the state to the requirements of due process, introduced into the State of Louisiana by its Constitution of 1845, and into the Federal Constitution by the adoption of the Fourteenth Amendment in 1867. The great volume and copious quantities of water flowing down the Mississippi River, the principal floodway and drainage system for the Central United States, creates much more extensive and serious problems with respect to flood and water control than is the case with other states. This situation may explain why Louisiana has clung to the Civil law doctrine of appropriation under the police power, rather than the common law doctrine of eminent domain, with its requirements of hearings, public utility and necessity, and compensation at fair market value. See Wolfe, Richard P., “The Appropriation of Property For Levees: A Louisiana Study in Taking Without Just Compensation”, 40 Tu.L.R. 233 (1966), on the development of the doctrines of eminent domain and police power.
Even though Louisiana’s riparian servitude may represent a more intractible, and stern position than other states adopt in regard to the public safety and necessity as *812 opposed to the rights of private ownership, the history of legislation and the jurisprudence of the State of Louisiana shows some evolution from the early drastic measures, making adjacent property owners personally responsible for the construction and maintenance of their levees, to the establishment of the levee board system, after which came the creation of a Board of Levee Commissioners for the whole state, followed by the establishment in 1879 by Congress of the Mississippi River Commission, and finally to the passage of the Mississippi River Flood Control Act of 1928, extending the responsibilities of the Federal Government considerably in the area of flood control. Meanwhile, the expense of constructing and maintaining levees has long since been shifted from the private owner to the public.
The political justification for appropriation has changed over the years, but the state has retained its authority of regulation vested in the levee boards.
Despite the adoption in the Louisiana Constitution of 1845 that vested rights could not be divested except for purposes of public utility and upon payment of just compensation, the jurisprudence commencing with Dubose v. Levee Commissioners, 11 La.Ann. 165 (1856) to Peart v. Meeker, 45 La.Ann. 421, 12 So. 490 (1893), and Bass v. State, 34 La.Ann. 494 (1882), and particularly the landmark case of Cash v. Whitworth, 13 La.Ann. 401 (1858), has continued to limit the riparian servitude to appropriation under the police power, for the public safety, rather than extending it to expropriation with fair value being given for the taking. Louisiana’s Civilian property law justification for the servitude has even been reconciled with federal constitutional limitations in Eldridge v. Trezevant, 160 U.S. 452, 16 S.Ct. 345, 40 L.Ed. 490 (1896); in Wolfe v. Hurley, 46 F.2d 515 (D.C.La.W.D.1930), aff’d per curiam, 283 U.S. 801, 51 S.Ct. 493, 75 L.Ed. 1423 (1931); and in General Box Co. v. United States, 351 U.S. 159, 76 S.Ct. 728, 100 L.Ed. 1055 (1956).
While firmly retaining the right of appropriation, even though shifting responsibility for construction and maintenance and expense therefor from the private owner to the public, Louisiana continued to show the riparian owner more consideration as witnessed also by La.Act No. 41 of 1892, which permitted the Orleans Levee Board to compensate the adjacent owners for property appropriated or destroyed by levee construction. The latest concession in this wise is the provision contained in the 1921 Constitution, authorizing the payment to all other riparian property owners throughout the state to the extent of the assessment for the previous year of the property taken. This compensation has consistently been held to be a “gratuity” only. See Richardson & Bass v. Board of Levee Com’rs, 226 La. 761, 77 So.2d 32 (1954).
We are aware and take cognizance of the legal precepts contained and expressed in Dickson v. Board of Com’rs of Caddo Levee Dist., 210 La. 121, 26 So.2d 474 (1946); Hathorn v. Board of Commissioners, La.App., 218 So.2d 335 (1969), and almost countless other cases, some of which have been cited herein, substantially holding in consort that riparian land is subject to a servitude for the construction and maintenance of levees, and may be appropriated for such use by properly constituted bodies, such as levee boards, without payment therefor, with the exception of the property under the control of the Orleans Levee Board, specially provided for by statute, and other than the payment of the assessed value of the property taken for the preceding year. This rule has application and effect despite the constitutional guaranty that one cannot be deprived of his property except for public purposes and after adequate compensation — these cases also further holding to the effect that the action of the levee board in constructing and maintaining levees is jurisdictional and is not subject to review unless there has been some palpable abuse.
While the trial court was impressed with the logic and cogency of plaintiffs’ position *813 that in the exercise of its authority and power granted by law, the evidence indicated the actions of the Levee Board to border on arbitrariness and capriciousness, but the lower court further held the evidence did not point to a palpable abuse of its discretion, and, therefore, the actions of the Levee Board were unassailable on this ground.
The trial judge apparently couches the requirement in his reasons for judgment that the Levee Board make payment for land in process of being taken on the basis of the assessed value for the preceding year because the evidence was not convincing the resolution of 1934 included the subject tract. As this court appreciates it, compensation under said Art. 16, Sec. 6 (Const. 1921) is due whether the land was included in the original appropriation or not.
It is clear that the payment envisioned in 1921 La.Const. Art. 16, Sec. 6 provides that payment of the assessed value for property taken need not be made before the taking.
Although it is a plain and admitted fact that the Verdun property is subject to a servitude for levee repair under Civil Code Article 665, which reads as follows:
“Servitudes imposed for the public or common utility, relate to space which is to be left for the public use by the adjacent proprietors on the shores of navigable rivers, and for the making and repairing of levees, roads and other public or common works.
“All that relates to this kind of servitude is determined by laws or particular regulations.”
and also that the tract proposed to be taken was included within the area covered by the Atchafalaya Levee Board Resolution of 1934, it is equally clear that the proposed taking here would constitute arbitrary, capricious, oppressive and unreasonable exercise of an admittedly broad and extensive power and authority, which, according to earlier cases, is the only reason for which the decision of officers of a public body such as a levee board would not be accepted by the courts. See Dubose, Bass, and Peart, supra, Zenor v. Parish of Concordia, 7 La.Ann. 150, 151 (1852) and Pruyn v. Nelson Bros., 180 La. 760, 157 So. 585, 587 (1934).
There has been no levee board resolution regarding this particular property since 1934. Although there is no statutory requirement for a resolution prior to each taking, it does not seem in any sense reasonable or equitable that such a levee board resolution last interminably. Radical changes in navigable streams and the properties adjoining such waterways often come to pass over an extended period of time such as 35 years, and while we again allude to the reluctance of courts to interfere with the exercise of duties imposed on bodies such as the Intervenor-Appellant particularly where discretion is involved, yet this court is convinced that failure of the Levee Board here to reconsider the 1934 resolution with respect to its present efficacy, its current workability, and what, if any, changes or alterations needed to be made in its composition indicated a lack of interest in the proper and just discharge of the powers and authority with which the Levee Board was imbued. The last time the resolution was exercised against the plaintiffs’ land was in 1941, now approximately 30 years ago.
The evidence is crystal clear that the Levee Board has chosen to excavate and take the 2i/¿ to 3 acres of the Verdun property to repair a levee 3)4 miles distant from the subject tract when there is other land “closer”, more accessible and subject to the same servitude.
There is no evidence in the record which controverts the testimony of Priestly Verdun that they do not have any other land which might be used for cultivation to substitute for that proposed to be taken.
This court will hold that the Inter-venor-Appellant has exercised its power and authority in an arbitrary, capricious and unreasonable manner, and to the extent *814 that its actions would work an unjust and oppressive effect on plaintiffs-appellees.
This court will affirm the judgment of the trial court insofar as granting the plaintiffs-appellees a permanent injunction against the appropriation and proposed taking of the subject parcel of land by Inter-venor-Appellant, such affirmation being for the reasons hereinabove stated, and in no sense shall this injunction be recalled and vacated by the “gratuitous” payment on the part of the Intervenor-Appellant of the assessed valuation for the preceding year of the part taken. Intervenor-Appellant shall pay all costs of court or such as may be required of it by law.
Affirmed.