## TILDEN v. UNITED STATES.

### No. 2305.

District Court, W. D. Louisiana, Alexandria Division.

Dec. 21, 1934.

Brian & Brian, of New Orleans, La., for plaintiff.

Philip H. Mecom, U. S. Atty., and E. A. Mottet, Asst. U. S. Atty., both of Shreveport, La.

DAWKINS, District Judge.

Plaintiff was the owner of certain lands on the south bank of Red river in Rapides parish. Early in the fall of 1928 the government engineers, in collaboration with the local levee board, decided to construct, as an emergency measure, a levee across the front of plaintiff's said lands nearest the river. The buildings and improvements were first removed by the levee board to other portions of the tract, and in September of that year the government commenced construction of the levee under authority of the Act of Congress of May 15, 1928, commonly known as the Flood Control Act (33 USCA §§ 702a–702m). There were no prior proceedings of condemnation, but simply appropriation. Some 13.23 acres of land were thus taken, and the plaintiff thereafter, on December 23, 1932, filed this suit, claiming as damages for the value of the lands, improvements, and accessories of which he had been deprived, as follows:

Value of 13.23 acres of land taken at $350 per acre . . . . . . . . . . . $4,630.50
Value of 20 pecan trees destroyed or rendered valueless . . . . . . . . $3,000.00
Value of sundry other trees destroyed or rendered valueless $1,180.00
Value of underground cistern, outhouses, pens, etc. . . . . . . . . . $ 125.00
Value of fences destroyed . . . . . . $ 250.00
Loss in reduction of value of remaining land from destruction of artistic surroundings . . . . . . $1,000.00
Loss of use of Sandy Bayou for watering purposes . . . . . . . . . . $ 500.00

Total amount due petitioner  $10,685.50

Counsel then discovered that the demand was in excess of $10,000, the maximum jurisdiction of this court under the Tucker Act (28 USCA § 41 (20), which was the only authority for suing the government in this forum, and on January 3, 1933, amended the petition and entered a remittitur of the $1,000 claimed as the "reduction of value of remaining lands" caused by the "destruction of artistic surroundings." The government contends that the plaintiff is limited in his right of recovery to the assessed value of the property taken or destroyed, as provided by section 6 of article 16 of the state Constitution of 1921 (amended in 1928). This is the principal legal question involved; that is, as to whether plaintiff is entitled to recover the full value of the property taken or its value for taxation purposes according to the assessment of the state for the preceding year, 1927. If the former, then the court will have to review the facts and find the value, but, if the assessment controls, we need only to refer to undisputed figures.

While it is true the levee board had the improvements moved off the land, it was done, I think, to facilitate the government in its undertaking to appropriate it for levee purposes. All of the 13.23 acres have been used or occupied by the levee, borrow pits, etc., so that admittedly it has been destroyed in so far as any useful purpose to the plaintiff is concerned. The taking by the government was under its own power of eminent domain which is inherent in sovereignty. Putting aside for the present any provision of the Louisiana law, the Fifth Amendment to the Federal Constitution, among other things, declares: " * * * Nor shall private property be taken for public use, without just compensation." Whenever the Secretary of War is authorized by law to institute in the name of the government proceedings "for the acquirement by condemnation of any lands, easements, or rights of way needed for a work of river and harbor improvement," proceedings for that purpose may be instituted, and, having done so, he may take possession and "proceed with such works * * * *provided, That certain and adequate provision shall have been made for the payment of just compensation to the party or parties entitled thereto."* (Italics by the writer.) Section 594, U. S. C., title 33 (33 USCA § 594). And "the jury or other tribunal awarding the just compensation or assessing the damages to the owner * * * shall take into consideration by way of reducing the amount of compensation or damages any special and direct benefits to the remainder [of the property] arising from the improvement. * * * *" Section 595, U. S. C., title 33 (33 USCA § 595). Concededly, the action of the government in this case was under the Act of May 15, 1928, above referred to (sections 702a et seq., title 33, U. S. C. [33 USCA § 702a et seq.]). Section 4 of that act (section 702d) declares:

"The Secretary of War may cause proceedings to be instituted for the acquirement by condemnation of any lands * * * needed in carrying out this project. * * * in the * * * court for the district in which the land * * * is located. * * * The court, for the purpose of ascertaining the value of the property and assessing the compensation to be paid, shall appoint three commissioners, whose award, when confirmed by the court, shall be final. * * * The provisions of sections 594 and 595 of this title are hereby made applicable to the acquisition of lands * * * under the provisions of this Act [section]." And "any land acquired under the provisions of this section shall be turned over *without cost* to the ownership of States or local interests." (Italics by the writer).

Notwithstanding the general provisions of sections 594 and 595, title 33, U. S. C. (33 USCA §§ 594, 595), and the special provisions of the Act of May 15, 1928, above referred to, and quoted, the Supreme Court, in the case of Hurley, Secretary of War, v. Kincaid, 285 U. S. 95, 52 S. Ct. 267, 269, 76 L. Ed. 637, in construing the identical act under which the property in the present case was taken, said that the "Fifth Amendment does not entitle [the owner of lands taken for public use] to be paid in advance of the taking," but that he has a right of action

against the government under the Tucker Act as on an implied contract. Hence the defendant was within its right in appropriating the property without pursuing the course prescribed by these statutes, and the plaintiff has properly instituted his action under the Tucker Act. The method of ascertaining values as laid down in condemnation proceedings under the Act of May 15, 1928, no longer can apply or be used, but I see no reason why the plaintiff should receive anything less or be paid on any different basis of value for his property. The Fifth Amendment is, of course, a restriction upon the federal government and its agencies, but has no application to state action. Were this a case where the government had taken property for its own use, such as land for "harbor improvement," or any other instance, where the title vested in it for strictly federal purposes, I do not believe it could be seriously said that the clause of the Fifth Amendment above quoted would not compel the payment of "just compensation," meaning the fair value of the property taken.

▮ It is argued that, because the Act of May 15, 1928, provides that property taken under its provisions "shall be turned over without cost to the ownership of States or local interests," the government is merely the agent of the state, and is therefore entitled to avail itself of any provisions of the state law affecting the price to be paid in either condemning or taking property under the Act of May 15, 1928. However, the statute contains nothing, other than this last-quoted phrase, for conveyance to the state or its agencies, indicating that Congress had in mind anything different to what was embraced in the existing statutes with respect to condemnation or appropriation of private property for public use. Whether it is taken by formal condemnation proceeding or by physical occupancy, the result is the same, that is, the title, after payment of the just compensation, vests in the United States, and it is "turned over without cost" to the state or local interest. It seems clear that the purpose was to donate the property to the state or its subdivisions, with the idea that the latter should keep up the levee or river improvement. I see nothing in the act which changes the obligation of the government in this case from what it would be in any other where private property was taken for public use. On the other hand, express provisions for condemnation by the federal government of lands "needed in connection with a work of river and harbor improvement duly authorized by Congress" on behalf of "any person, company, or corporation, municipal or private," and the states or their subdivisions, are to be found in sections 592 and 593, title 33, U. S. C. (33 USCA §§ 592, 593). In such cases the law provides that such persons, corporations, state or its subdivisions shall pay "all expenses of said proceedings and any award that may be made," and the Secretary of War may require a bond for the protection of the government in this respect, "before said proceedings are commenced."

Regardless of whether the government could, under any conditions, take property upon a navigable stream for levee purposes under the theory of necessary servitude of the civil law, without paying for it, the statute now construed clearly did not so contemplate, but specifically provided for payment. The levee board could have undoubtedly either appropriated or expropriated the property without incurring liability beyond the assessed value under section 6, art. 16, of the state Constitution of 1921, but that course was not pursued. The government itself appropriated it, and I think will have to pay the just value.

▮ In determining the value of the property taken, conditions at the time of the taking control, and I think the evidence reasonably establishes that in September, 1928, the 13.23 acres of land were reasonably worth $250 per acre; that the 19 pecan trees were worth $30 each, the walnut and other ornamental trees were worth $200, and the cistern $100, making a total of $4,126.15. Any other property taken or damage caused in the nature of advantage of location, availability of the bayou, etc., I think are compensated or offset by the removal of the improvements to a location upon what is now a paved highway and the protection of the remaining property from overflow by the levee.

Proper decree should be presented.