73 So.2d 299

**BOARD OF LEVEE COM'RS OF ORLEANS LEVEE DIST.**

v.

**KELLY et al.**

No. 41583.

April 26, 1954.

Rehearing Denied May 31, 1954.

C. Paul Barker, Cyril Broussard, Ivor A. Trapolin, John P. Nelson, Jr., New Orleans, for defendants-appellants.

J. David McNeill, New Orleans, for appellee.

LE BLANC, Justice.

The Board of Levee Commissioners of the Orleans Levee District (hereinafter referred to as the Levee Board) instituted this proceeding by which it seeks a mandatory injunction against some sixty or more individuals who are occupying dwellings situated on the batture along the Mississippi River in Orleans Parish between Burdette Street and the parish line of Jefferson Parish. An order is asked for commanding them to remove any works or structures placed there and occupied and maintained by them and also restraining and prohibiting them from obstructing or interfering in any way with the carrying out of a levee project, the plans of which have been approved by the United States Army Engineers and under whose direction and supervision the work will be done.

The Sewerage and Water Board of New Orleans and the New Orleans Public Service, Inc., both of which service these batture dwellers are also made defendants but their interest may be said to be only that of rendering their service and it will stand or fall with the orders or judgment to be rendered in the case.

In its petition the plaintiff Levee Board alleges that under the laws of this State it is charged with the duty and responsibility of constructing, maintaining and repairing all levees in Orleans Parish along the banks of the Mississippi River and in line with that duty and responsibility it was found necessary to enlarge that section of the levee extending from Burdette Street to the Jefferson Parish line and to pave the river slope of the levee. It alleges that the project will cost approximately $85,000 which cost will be borne by the Board of Army Engineers with Federal funds appropriated for that purpose. That it received a request by letter from the Board of Engineers dated October 30, 1952, to grant the necessary right of way and to clear the area of the levee involved of all buildings, structures and other obstacles so that the work could proceed.

In compliance with said request, it alleges that on November 17, 1952, by resolutions of that date, it granted the said right

of way and took necessary steps by giving proper notices to all the batture dwellers as well as to the Sewerage and Water Board and the New Orleans Public Service, Inc., to clear the levee of all buildings and other constructions but that the notices have not been heeded.

Plaintiff avers that the improvements that are contemplated are imperative and should be completed immediately, during the period of low water in the river, and that they cannot be undertaken unless the levee and batture is cleared as demanded by the Board of Army Engineers.

Lastly it alleges that delay in completing the project is endangering the general public and especially the people of the City of New Orleans and that unless the Army Engineers are allowed to complete it within the current fiscal year, the Federal funds appropriated for that purpose will go back into the general fund of the Federal Government and the work cannot be resumed again until another appropriation is made by the Congress of the United States.

The defendants filed exceptions of vagueness and of no right or cause of action and and on the same day they filed their answer. The exceptions don't seem to have been acted on in the lower court.

In their answer the defendants deny practically all the allegations of plaintiff's petition and answering further they aver that they have been living on the batture for many years; that during that time there has been repair and maintenance work performed on the levee in that area with which work they have never interfered and that they do not now or in the future intend to oppose any work necessary for the repair of the levees.

After trial on the merits in the court below there was judgment in favor of the plaintiff. A writ of mandatory injunction was granted ordering the defendants to remove their dwellings and all of their property from the banks of the river within thirty days, and upon their failure to do so, ordering the plaintiff and the Civil Sheriff of the Parish of Orleans, or either of them, to forcibly eject them, and further restraining them from interfering with the plaintiff or the Sheriff in so proceeding. The Sewerage and Water Board and the New Orleans Public Service, Inc., were ordered, within thirty days, to discontinue service to the dwellings on the batture and to remove all constructions placed by them in the area. The defendants took and perfected an appeal to this Court but they have now filed a motion to transfer the case to the Court of Appeal for the Parish of Orleans.

The motion to transfer is based on the ground that there is not sufficient evidence in the record of the value of the property of any one defendant on which the appellate jurisdiction of this Court can be invoked. Irrespective of this however, there is another ground on which the appeal properly rests in this Court. In its petition plaintiff made an allegation to the effect that the sum of $85,000 which has been

appropriated by the Federal Government for the work that is contemplated will be returned to the general fund of the Federal Government unless the project is completed within the current fiscal year and that allegation is substantiated by the record. The effect of that would be that for the present, at least, plaintiffs would stand to lose those funds and that, in itself, is a sufficient showing to sustain our jurisdiction.

There are no serious legal problems involved in the case. The Levee Boards of the State are created by the Legislature under authority of the Constitution. Their jurisdiction, their rights and powers are generally well defined by the statutes creating them. Primarily, it may be said, they have the duty and responsibility of providing, by the best methods, for the thorough protection of their respective districts from overflow, and to this end they are given the control and maintenance, the construction and repair of all levees in their district.[1]

By the provisions of Section 5 of Article XVI of the Constitution, "all governing authorities of districts which have been, or may be created, are authorized to co-operate with the Federal Government in the construction and maintenance of the levees in this State, on such terms and conditions as may be provided by the Federal authorities and accepted by the State authorities." It is under this authority that the Federal Government, through the Board of Army Engineers, approved the plans for the work to be performed in the present instance and will supervise it.

The defendants in this case are concededly occupying the batture without a vestige of title or any legal right. They are not riparian owners nor do they claim any rights under a riparian owner. Even the riparian owner, in whose favor a servitude may exist under the law, has to yield his rights "for the making and repairing of levees, roads and other public or common works." LSA–C.C. art. 665. In the case of Pruyn v. Nelson Bros., 180 La. 760, 157 So. 585, 587, it is stated that "The law is clear that all landed proprietors, whose property is adjacent to a navigable stream, hold it subject to certain conditions imposed for the common utility or public welfare" and that "The batture as well as the riparian property along the Mississippi river is subject to a servitude for the building and repairing of levees, and this servitude is in favor of the public." Again referring to this servitude, the Court further on stated that it is limited only by the reasonableness of its use, and the administrative officers of the state of Louisiana [in that case the Pontchatrain Levee Board] "are charged with determining that limit, subject to review by the courts only when oppression or injustice is shown and proved." Dubos

1. For the statute creating the Orleans Levee District, see LSA–R.S. 38:1231.

v. Levee Commissioners, 11 La.Ann. 165, Egan v. Hart, 45 La.Ann. 1358, 14 So. 244 and Wolfe v. Hurley, 5 Cir., 46 F.2d 515, are cited as authority.

■■ From all of the foregoing it becomes apparent therefore that the issue in the present case resolves itself into one of the reasonableness of the use which the plaintiff Levee Board wants to make of its servitude over the batture where these defendants have erected their dwellings. Stated in a way more favorable to the contention of these defendants the question may be put as follows: Is the means by which the Levee Board seeking to exercise its rights, by demanding the removal of these structures, justified and reasonable? Or, Does the necessity for their removal exist in order to perform the work that is contemplated?

On a cold analysis of the record, an unqualified answer to the question as lastly put would have to be in the negative because it does appear that the work could be done with most of the structures located where they are with perhaps some inconveniences to the dwellers which they are willing to submit to. The Army District Engineer, Colonel Tench, who seems to be in authority over the whole matter, seems to admit in a letter dated September 4, 1953, apparently addressed to Congressman Hale Boggs, that "it is possible that portions of the proposed work could be done without moving existing structures." He states however, that in order "to accomplish the work without first clearing the right of way, would, in most cases, increase the cost of construction," and finally adds: "The Levee Board has been requested to furnish the right of way clear of obstructions and work will not proceed until it is." It thus appears that as far as the Levee Board, the plaintiff in the case, is concerned, it has no choice in the matter; that its hands are tied and unless it exacts compliance with the request the work will not be begun during the current fiscal year, in which event it stands to lose the sum of money already made available for the project by the Federal Government.

The record otherwise discloses that in order to do the work which consists of adding river sand to the crown of the levee, under the present conditions, would result in a substantial increase in cost. It appears that the more economical way in which to do the work would be with the use of heavy equipment and machinery, such as drag-lines and bulldozers, all of which require a clear and obstructed area for their ready and less costly maneuvering. Any other method would involve hauling of the sand, probably from greater distances, which obviously would greatly increase the cost. No one who testified in the case was able to say what the increase would be but one estimate, based on the hauling distance, was that it might be as much as thirty per cent.

Another element to be considered is the one of the hazard involved in performing the work with heavy equipment, conceding that to be possible under the existing situation. No contractor, it would seem to us, would undertake such work without protecting himself against possible damage to the buildings and consequent liability to the owners, and this again would involve an added cost to the overall problem.

Such considerations as these no doubt influenced the trial judge in resolving the factual situation presented to him in favor of the plaintiff. No manifest error appears in his finding. A Levee Board, in the discharge of its duty and responsibility in protecting the public against the danger of floods need not wait until the danger is imminent. Its duty is rather to maintain the levees at all times in such condition of repair as to avoid all possibility of danger. If in the performance of that duty a riparian owner must submit his legal rights and his conveniences to the public demands of necessity, certainly, as aptly concluded by the learned district judge, "the convenience of a group of batture dwellers on the banks of the Mississippi River, who have no semblance of legal right to temporary or permanent residence there" must a fortiori yield to reasonable demands of public necessity and economy such as appear in this case.

For the reasons assigned the judgment appealed from is affirmed.