TATE, Judge.
The defendant levee board adopted a resolution which required landowners to remove fences along the levee crown, unless cattle guards were installed in them by a certain date. Thirteen landowners sued to enjoin the levee board from enforcing this resolution.
The levee board appeals from adverse judgment. The plaintiffs answer the appeal, requesting modification of the injunction granted.
The central issue involves the extent and reasonableness of the exercise of the public servitude for making and repairing flood protection levees. Before stating the precise issue, it may be well to set forth the general nature of this servitude.
The Levee Servitude.
Under Civil Code Article 665, the public enjoys a servitude “for the making and repairing of levees” on lands adjacent to navigable rivers and streams. Dickson v. Board of Comm’rs, 210 La. 121, 26 So. 2d 474 (excellent historical survey). Riparian lands are regarded as burdened with this servitude at the time they are severed from the public domain. Board of Comm’rs for Pontchartrain Levee Dist. v. Baron, 236 La. 846, 109 So.2d 441; Delaune v. Board of Comm’rs, 230 La. 117, 87 So.2d 749; see also, Jeanerette Lumber & Shingle Co. v. Board of Comm’rs, 249 La. 508, 187 So.2d 715, noted, 27 La.L.Rev. 321 (1967).
Since private titles were so burdened at their inception, landowners are regarded as owning subject to the exercise of this ancient public servitude. Therefore, due process guarantees of the state and federal constitution do not protect riparian owners from the taking (appropriation) or damaging of their land for levee purposes without prior judicial proceedings, nor are they entitled as of right to compensation for its taking or its damaging for such purposes. Delaune v. Board of Comm’rs, 230 La. 117, 87 So.2d 749; Board of Comm’rs of Tensas Basin Levee Dist. v. Franklin, 219 La. 859, 54 So.2d 125, appeal dismissed for want of a substantial federal question, 342 U.S. 844, 72 S.Ct. 80, 96 L.Ed. 638 (1951); Dickson v. Board of Comm’rs, 210 La. 121, 26 So.2d 474; Wolfe v. Hurley, 46 F.2d 515 (D.C.La.1930), affirmed, 283 U.S. 801, 51 S.Ct. 493, 75 L.Ed. 1423 *337 (1930)[1] See also General Box Company v. United States, 351 U.S. 159, 76 S.Ct. 728, 100 L.Ed. 1055 (1950); Eldridge v. Trezevant, 160 U.S. 452, 16 S.Ct. 345, 40 L.Ed. 490 (1896); Wolfe, The Appropriation of Property for Levees, 40 Tul.L.Rev. 233 (1966).
In modern times, this public servitude has been exercised by levee boards created to construct and maintain levees. Dickson decision at 26 So.2d 478-80. See LSA-R.S. 38:281; Comment, Levees and Battures in the Law of Louisiana, 21 Tul. L.Rev. 649 (1947). It was established early that the actions of a public agency in locating, building, and maintaining a levee are not subject to judicial review save in case of “palpable abuse”. Dickson decision at 26 So.2d 480, citing Peart v. Meeker, 45 La.Ann. 421, 12 So. 490 (1893) and Dubose v. Levee Comm’rs, 11 La.Ann. 165 (1856).
It is in this historical context that we approach consideration of the particular problem posed by the present dispute.
The Present Facts.
The plaintiffs own land fronting on the Red River. The land is admittedly subject to the public levee servitude, and upon its river front has been constructed flood protection levees maintained by the defendant board. Art. 2 of the petition.
The plaintiffs’ lands lie within the jurisdiction of the Red River, Atchafalaya and Bayou Boeuf Levee District. LSA-R.S. 38:1351. The defendant Board of Levee Commissioners is designated as the state agency to administer the functions of the levee district; it is a body politic with corporate powers, authorized to sue and to be sued. LSA-R.S. 38:1355, 1356.
The board is specifically authorized to “devise and adopt rules and regulations for a comprehensive levee system having for its object the ultimate protection of the entire district from, overflow.” LSA-R.S. 38:-1355. A general statute authorizes all levee boards to “construct and maintain levees, levee drainage, and do all other things incidental thereto.” LSA-R.S. 38:281.
Directly at issue here is the constitutionality and reasonableness of the levee board’s exercise of powers granted it by LSA-R.S. 38:225 (amended 1966).[2] This statute prohibits the placement of any object or material on levees which “is an obstacle to the inspection, construction, maintenance, or repair of any levee.”[3] In addition to providing criminal penalties for violation, the statute also authorizes the levee agency to remove the object itself, if the landowner or person responsible for the obstacle does not remove it within forty-eight hours after notice to do so.[4]
*338 The present dispute involves the determination of the defendant board that fences with gates (which may be locked or chained) present obstacles to efficient passage along the crown of the levee for maintenance and inspection purposes. In accordance with its statutory powers, see especially LSA-R.S. 38:225, the board has required the removal of all fences unless cattle guards (instead of gates or fencing) are installed at the levee crown. The landowners resist this regulation as unreasonable and unconstitutional.
Specifically, pursuant to recommendations of the Louisiana Department of Public Works and the U.S. Corps of Engineers, the defendant levee board first adopted a resolution on March 26, 1965, requiring installation of cattle guards by December 31, 1967. See Exhibit P-2.[5] On August 26, 1966, the levee board adopted a further resolution requiring the removal of all existing fences without “a cattle guard crossing at top of the Levee by the deadline of January 1, 1968.” Exhibit P-3.[6]
Pursuant to the resolution, written notice was sent to all landowners who maintained either defective fence crossings or else fences without cattle guards at the crown of the levee. Tr. 133-35. These notices, went on or about February 9, 1967, concluded: “You will be given 30 days to comply with this request and if you fail to do so, you will have to remove your fence from the levee.” Exhibit P-4.[7]
*339 The present suit was brought on February 22, 1968 to enjoin the defendant board from destroying gates and fences belonging to the plaintiffs. By amended petition, the plaintiffs also sought an injunction prohibiting the levee board from collecting $100 for cattle guards. After trial, by thoughtful and forceful opinion our trial brother concluded that the plaintiffs were entitled to the injunction sought.[8]
Legal Issues.
The plaintiff landowners contend that the resolution requiring removal of their fences is arbitrary and capricious, beyond the legal power of the board to adopt, or (if not) violative of the due process and equal protection provisions of the state and federal constitutions.
Much evidence was introduced by the plaintiff landowners to show that installation of cattle guards will present a realistic hardship in the conduct of their livestock operations, especially since they will facilitate access by trespassers (hunters,* etc.). Some evidence was introduced to show that cattle guards[9] present a hazard to cattle operations, in that they are ineffective in retaining cattle and sometimes cause injury to livestock attempting to cross them. (However, much of such testimony is of a speculative nature or based upon defects in a particular cattle guard which were later corrected.)
In opposition to this testimony, the board produced substantial testimony to the effect that the maintenance of fences without cattle guards impeded its efficiency and increased its expenses in maintenance and inspection of levees.
For one thing, despite regulations to the contrary, one witness estimated that about one-third of the gates would be barb-wired or locked closed (primarily to prevent access by trespassers), causing difficulty in entry by levee maintenance and inspection personnel. Tr. 307. This witness, an engineer with the Louisiana Department of Public Works, testified that inspection trips by the engineering, survey, and maintenance parties took about two-three times as long with gates as with cattle guards, because of the delays in access through gated fences, as compared with immediate access over cattle guards. For similar reasons, fences without cattle guards caused the need for additional manpower or more time of levee personnel required to perform maintenance duties, such as mowing the grass and keeping the levees in repair. This testimony is corroborated generally by other witnesses for the levee board.
The evidence unquestionably reflects that the levee board adopted its regulation to require cattle guards in fences, instead of gates, upon the recommendation of the Louisiana Department of Public Works and of the United States Corps of Engineers. These experienced agencies are the board’s skilled advisers in its performance of its duty to build, inspect, and maintain flood protection works.
We may say that the evidence indicates that the levee board is responsible for maintaining 226 miles of levees. At the time the cattle guard installation program *340 was commenced in 1964 — 1965, nearly 500 fence-crossings required cattle guards. Tr. 329. At the time of trial, there remained only 27 crossings which needed cattle guards, Tr. 329, most of which were located on the 17 miles of riverfront south of Alexandria owned by the plaintiffs.
We recognize the forcefulness of the considerations which induced the trial court to find the requirement of cattle guards to be an unreasonable restriction upon the proprietor’s ownership of his land. Nevertheless, historically the courts cannot substitute their judgment for that of the state’s levee agencies responsible for protecting the public from floods, save in case of “palpable abuse” by the agency in the performance of its duties. Dickson v. Board of Com’rs., 210 La. 121, 26 So.2d 474, 480.
In so holding in Dickson, the Supreme Court there noted that “ * * * the right to construct these levees certainly carries with it the right to protect them in any manner found to be most expeditious from an engineering, economical, and practical standpoint.” 26 So.2d 480. As recently as 1954, our Supreme Court has reiterated that the public’s levee servitude “is limited only by the reasonableness on its use”, and that the levee boards, as “the administrative officers of the state of Louisana [,] ‘are charged with determining that limit, subject to review by the courts only when oppression or injustice is shown and proved.’ ” Board of Levee Com’rs. of Orleans Levee Dist. v. Kelly, 225 La. 411, 73 So.2d 299, 300. See also Pruyn v. Nelson Bros., 180 La. 760, 157 So. 585.
Reviewed by this standard, and viewed in the light of the historical extent of the ancient servitude for levee purposes with which all riparian land is burdened, we cannot find unreasonable the levee board’s determination that fences without cattle guards constitute an obstacle to the efficient and economic performance of its duties of .levee repair and maintenance. Substantial evidence and expert opinion support this determination.
The evidence further falls short of showing that cattle guards constitute an unreasonable hardship upon the plaintiff landowners in their cattle operations. Further, “however unfair [the exercise of the levee servitude] may seem to the owners of this type of land, they are without right to complain because their acquisition of such land was subject by law to this ancient servitude and the private mischief must be endured rather than the public inconvenience or calamity.” Dickson v. Board of Levee Com’rs., cited above, at 26 So.2d 479.
For this reason just quoted, as noted by the Dickson case and by other authorities cited above, a levee board’s exercise of its rights under this ancient servitude does not offend due process or equal protection guarantees of the state and federal constitutions. We therefore reject the plaintiffs’ contentions to the contrary.
It has been held that, by reason of the levee servitude, prior court approval is not required before removal of soil in order to enlarge a levee, Pruyn v. Nelson Bros., 180 La. 760, 157 So. 585, nor to bulldoze trees for its better efficiency, General Box Co. v. United States, 351 U.S. 159, 76 S.Ct. 738 (1956), when such removals are deemed necessary by the levee agency. We do not deem such prior court approval any more necessary before the levee board may, in the exercise of its statutory powers based upon the ancient servitude, require a landowner to remove upon notice his fence as an obstacle to levee inspection and maintenance; nor before, in default of the landowner himself doing so, the levee board may itself remove the fence.
Further, we note that the statute (LSA-R.S. 38:225) requires at least 48 hours notice before the levee board may by self- *341 help remove the obstacle from the levee crown in non-emergency situations. (Actually, the levee board itself by its own administrative regulation gave 30 days written notice of its intent to remove the fences if arrangements were not made by the landowner to install cattle guards in them.) The delay between notice to the landowner and action by the levee agency contemplates that, by injunction suit filed in this interval, the landowner may seek judicial review of the reasonableness of the agency determination that the object to be removed constitutes an obstacle to levee inspection and maintenance. This, in fact, is the method by which the present landowners, by the instant suit, obtained judicial review of the agency determination in question.
The landowners finally rely upon Lake Providence Port Commission v. Bunge Corp., La.App.2d Cir., 193 So.2d 363. They contend that this decision holds that a riparian owner may not be required to remove works constructed on his land until after appropriate legal procedure orders him to do so.
The decision concerned the right of a port commission, not a levee agency. The simple distinction is that there, as the court held, the constitutional and legislative authority of the port agency entitled it to acquire land, make constructions, and regulate river navigation, but it did not include “the right to prohibit reasonable use of property owned by others adjacent to the banks of navigable waters.” 193 So.2d 368.
We do not regard the decision as persuasive. Unlike the port agency in question, the present levee board is specifically authorized by statute to remove an obstacle from the levee or to order its removal by the owner, LSA-R.S. 38:225. See Footnotes 3 and 4 above. As previously noted, futhermore, the levee board enjoys wider powers of appropriation and regulation in the administration both of the lev.ee servitude and of the board’s statutory powers.
By answer to the appeal (reiterating a prayer in their petition), the landowners also seek to enjoin the levee board from collecting $100 for installation of cattle guards.
We have found that the levee board has a right to require the landowners to remove their fences as obstacles to maintenance of the levee. This being so, we are unable to find unreasonable the regulation that a landowner, desiring to secure a fence permit either to continue maintenance of or to build a fence, may be permitted to receive one only if he installs a cattle guard of suitable specifications or else pays the board $100 for it to install such a cattle guard at or below cost.
Within the permissible judgment of the board the cattle guard is necessary to prevent the fence, if allowed, from impeding the board’s maintenance and inspection activities. If the board has the power to remove or prohibit all fences because they constitute obstacles to efficient levee inspection and repair, it necessarily possesses the lesser power (if, as here, reasonably exercised) to permit fences if modified so that they are no longer obstacles to the board’s performances of these levee functions.
Conclusion and Decree.
We therefore find that the plaintiff landowners are not entitled to enjoin the defendant agency from enforcing its resolution requiring the removal of fences, unless cattle guards are installed in accordance with board regulations and specifications. Accordingly, we reverse the judgment of the trial court enjoining the defendant board, and we dismiss the plaintiffs’ suit. All costs of the trial court and of this appeal are assessed against the plaintiffs-appellees.
Reversed; suit dismissed.

. Since 1921 our state constitution has provided that payment at the assessed value shall be made for lands taken or improvements used or destroyed for levee purposes, La.Const. Art. 16, Section 6, hut the jurisprudence is uniform as describing this as a gratutity paid by grace of the sovereign for its exercise of its ancient levee servitude. See Delaune decision at 87 So.2d 762; Dickson at 26 So. 2d 477-79.

. The pertinent provisions of this statute were first enacted by Act 16 of 1892 in substantially similar language.

. Pertinently, LSA-R.S. 38:225 (as amended 1966) provides : “No person shall: (1) Place or cause to be placed upon or within six feet of any part of the levees fronting any waterway subject to the control or surveillance of police juries, levee hoards, municipal corporations, or other authorized boards or departments any object, material, or matter of any kind or character which obstructs or interferes with the safety of the levees or is an obstacle to the inspection, construction, maintenance, or repair of any levee; * *

.See LSA-R.S. 38:225 (as amended 1966) : “ * * * If after forty-eight hours’ notice by any district commissioner, levee inspector, or authorized representative of the state, agency or subdivision thereof, the object or objects, structures or other obstructions have not been removed, said objects can be removed or the menace abated and any damage repaired by the state, its agency or subdivision at interest at the expense of the owner, agent or person responsible therefor. The objects, structures or other oh- *338 structions may be attached and may be removed from said levee or land at the risk and expense of the owners or persons responsible therefor to remove the menace to said levee or the obstacle to the improvement or maintenance of such waterway.” * * *.

. This resolution required the landowners “to either install cattle guards which meet the specifications of the Board, or pay to the Levee District the sum of One Hundred and No/100 ($100.00) Dollars per cattle guard or remove the fence completely. Installation and maintenance of cattle guards will be by Levee Board employees.”

. The text of this resolution is as follows: “1VHEREAS, the Board of Commissioners of the RRABB Levee Dist. has received a report from the Maintenance Supt. that a large number of gates and fences crossing the levees in the various parishes are in extremely bad condition which is a detriment to the maintenance and inspection of our levee system, and WHEREAS the Board had previously adopted a resolution whereby a fence permit would not be issued unless the property owner had the regulation type cattle guard installed by the Levee Board employees and maintained by the Levee District, and WHEREAS a large number of fences were already in place prior to the adoption of the resolution which requires a cattle guard where the fence crosses the top of the levee and said fences and gates are becoming more of a hinderanee to the maintenance and inspection of the levees, now THEREFORE BE IT RESOLVED that the Board does hereby move that all existing fences within this Levee District shall have a cattle guard crossing at top of the Levee by a deadline of January 1,1968. BE IT FURTHER RESOLVED that all property owners with poor fencing and sub-standard gates be notified by certified mail to have the gates replaced with regulation cattle guards to be installed and maintained by said levee District and that a fence permit will be issued only when the proper cattle guard is installed.” (Transcript-41)

.The notices, signed by the Board President, stated in full: “Dear Sir: On March 26, 1965 the Board of Commissioners of the Red River, Atchafalaya and Bayou Boeuf Levee District adopted a resolution whereby cattle guards would have to be installed at all fences crossing the levees within this District. These cattle guards will be installed by the Levee District and the property owner will be required to pay $100 to offset the cost. They will be maintained by the Levee District after installation. Inasmuch as you have a fence across the levee and have either a bad gate or no gate at all, you are hereby notified that a fence permit will have to be secured from this office. In order to secure a permit, you are requested to either mail or bring your check or money in the amount of $100 for each cattle guard to the Levee Board office, at the above address. You will be given 30 days to comply with this request and if you fail to do so, you will have to remove your fence from the levee. This is becoming a state-wide procedure and we trust that you will cooperate with us in *339 every way.” However, a third option was also permitted by further notice: A landowner could install a cattle guard at his own expense, providing it met Department of Public Works specifications. Tr. 142-144.

. The injunction was issued “subject, however, to the qualification that the injunction is based upon the present factual situation, and with the further qualification that there is reserved to the defendant the right to establish whatever legal proceedings are available its right to remove the fences and gates presently in place on the levee.” The plaintiffs’ answer to the appeal requests deletion of this qualification.

. A cattle guard is an opening in a fence in which a pit has been dug, across which is laid a row of bars. Vehicles can cross over these bars without difficulty, but the bars are too far apart for cattle to walk safely across, so cattle will not cross for fear of the precarious footing.