NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

23-717

BROADMORE DRAINAGE DISTRICT & JEFFERSON DAVIS POLICE JURY

VERSUS

KEITH WEEKLY

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTY-FIRST JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON DAVIS, NO. C-17-23
HONORABLE CRAIG STEVE GUNNELL, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

CANDYCE G. PERRET
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Candyce G. Perret, Gary J. Ortego, and Guy E. Bradberry, Judges.

AFFIRMED.

**Billy Edward Loftin, Jr.**
**Loftin Law Group, LLC**
**133 Dr. Michael DeBakey Drive**
**Lake Charles, LA   70601**
**(337) 310-4300**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Keith Weekly**

**Lauren C. Heinen**
**District Attorney, 31st Judicial District**
**B. Lance Person**
**Assistant District Attorney**
**300 State Street, Suite 206**
**Jennings, LA   70546**
**(337) 550-5378**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
     **Broadmore Drainage District**
     **Jefferson Davis Police Jury**

**PERRET, Judge.**

Keith Weekly, Defendant-Appellant, appeals the trial court's May 24, 2023 Judgment, which granted a mandatory injunction in favor of Broadmore Drainage District (the "Drainage District") & Jefferson Davis Parish Police Jury (the "Police Jury"), Plaintiffs-Appellees. The judgment ordered Mr. Weekly to move a utility pole off a levee, ordered him to move his mobile home to a distance fifteen feet from the foot of the levee, and enjoined him from installing or placing any obstructions on or within fifteen feet of the foot of the levee. After review, we affirm.

**FACTS AND PROCEDURAL BACKGROUND:**

Plaintiffs initiated this suit with a Petition for Mandatory Injunction filed on January 11, 2023, pursuant to La.R.S. 38:225(E). Therein, Plaintiffs alleged that Mr. Weekly owns property in Lake Arthur, Louisiana, purchased in 2019, and that a "navigable, drainage canal off the Mermentau River . . . known as Monlezun Canal or the Lake Arthur Drainage Canal, runs along the Weekly Property" along with a levee. The Police Jury assumed responsibility for the maintenance and upkeep of the levee from the 1960s until the Drainage District was created in 1982, at which point the Drainage District maintained the canal and levee and has ever since. The petition further asserts that after purchasing the property, Mr. Weekly installed a utility pole on the levee, and a mobile home within fifteen feet of the levee, despite notices from Plaintiffs and in violation of La.R.S. 38:225.

In opposition, Mr. Weekly asserted that he corresponded with the Police Jury and was told that he had addressed all infractions with the property prior to Plaintiffs' request that the mobile home and utility pole be moved, and prior to the initiation of this suit. Mr. Weekly raised an equitable estoppel claim and asserted that he

detrimentally relied on his communications with the Police Jury and District Attorney Kevin Millican, as well as permits issued to him.

An evidentiary hearing was held on February 28, 2023, after which the parties submitted post-trial briefs. Thereafter, the court issued Reasons for Ruling, finding that the utility pole was in violation of La.R.S. 38:225 because "the utility pole is clearly installed on the levee itself" and "was placed there without a permit or permission of the Drainage District." Additionally, despite Mr. Weekly's claims that he received permits for his mobile home/camp construction and placement, none of which were from the Drainage District, and claims that he extended the borders of the levee by adding soil himself, Mr. Weekly had been warned "that he would not be permitted to place items on or near the levee" and the Town of Lake Arthur would be advised "to not issue any permits for construction within 100 feet of the canal." On May 24, 2023, the trial court signed a judgment granting Plaintiffs' mandatory injunction, ordering the utility pole and mobile home/camp be moved at least fifteen feet from the foot of the levee, and enjoining Mr. Weekly from installing any obstruction within fifteen feet of the levee.

Mr. Weekly appeals and assigns two errors of the trial court:

1. The trial court abused its discretion and committed legal error in granting Appellees' Application for Mandatory Injunction . . . as the Appellees failed to introduce any testimony, surveys or documentation proving the existence or location of the alleged levee affecting Weekly's property.

2. The trial court abused its discretion and committed legal error . . . . wherein the Judgment did not describe with particularity the levee which was the immovable property affected by the Judgment for Mandatory Injunction, as clearly required by La.Code Civ.P. art. 1919 and 2089.

2

**DISCUSSION:**

Assignment of Error One:

"A mandatory injunction commands a party to take specific action." *City of New Orleans v. Bd. of Dirs. of La. State Museum*, 98-1170, p. 11 (La. 3/2/99), 739 So.2d 748, 756. As with a permanent injunction, a mandatory injunction may only be issued when the mover shows "by a preponderance of the evidence at an evidentiary hearing that he is entitled to the preliminary injunction." *Id. See also Denta-Max v. Maxicare La. Inc.*, 95-2128 (La.App. 4 Cir. 3/14/96), 671 So.2d 995 (the issuance of a mandatory injunction requires the party seeking the injunction to prove by a preponderance of the evidence at a full evidentiary hearing that he is entitled to the injunction). Additionally, "the requisite showing of irreparable injury is dispensed with 'when the conduct sought to be restrained is unconstitutional or unlawful, *i.e.*, when the conduct sought to be enjoined constitutes a direct violation of a prohibitory law[.]'" *Fisher v. Town of Boyce*, 16-960, p. 9 (La.App. 3 Cir. 4/5/17), 219 So.3d 342, 349 (quoting *Jurisich v. Jenkins*, 99-76, p. 4 (La. 10/19/99), 749 So.2d 597, 599), *writ denied*, 17-1051 (La. 10/9/17), 227 So.3d 837. Moreover, under the statute allegedly violated in this case, La.R.S. 38:225, subsection (E) states: "The governing authority that has jurisdiction of a levee, many bring a civil action for damages and/or injunctive relief, including but not limited to the issuance of a mandatory injunction. In any suit for the issuance of an injunction, proof of irreparable harm shall not be necessary."

As a mandatory injunction may only be issued after a trial on the merits with the mover proving he is entitled to the injunction by a preponderance of the evidence, as is required when a party seeks a permanent injunction, we will review the grant of the mandatory injunction using the manifest error standard of review. *See Fondel*

3

*v. Fondel*, 20-221 (La.App. 3 Cir. 3/10/21), 312 So.3d 1180, *writ denied*, 21-655 (La. 9/27/21), 324 So.3d 93.

The Drainage District asserts that it is entitled to a mandatory injunction under La.R.S. 38:225(E) due to acts by Mr. Weekly that violate La.R.S. 38:225(A)(1)(a) and (A)(10)(emphasis added), which provide as follows:

> A. No person shall:
>
> (1)(a) Except as provided by Item (b)(i) of this Paragraph, **place or cause to be placed upon or within fifteen feet of any part of the levees** fronting any waterway subject to the control or surveillance of police juries, levee boards, municipal corporations, or other authorized boards or departments, any object, material, or matter of any kind or character **which obstructs or interferes with the safety of the levees or is an obstacle to the inspection, construction, maintenance, or repair of any levee;** or place or cause to be placed any object, structure, material, or matter of any kind or character upon any part of any land which the state or any agency or subdivision thereof may own or acquire by deed, lease, servitude, charge, or otherwise, and through its authorized representative, may donate, grant, or otherwise convey to the United States rights-of-way, easements, or other servitudes for the construction, improvement, or maintenance of any flood-control structures or natural or other waterway, which may obstruct or interfere with the improvement or maintenance of such waterway or use of the land for flood-control purposes.[1]
>
> . . . .
>
> (10) **Drive or otherwise sink piles within two hundred fifty feet of the levee** unless he has first received a permit or a letter of no objection from the levee district.
>
> . . . .
>
> E. The governing authority that has jurisdiction of a levee, may bring a civil action for damages and/or injunctive relief, including but not limited to the issuance of a mandatory injunction. In any suit for the issuance of an injunction, proof of irreparable harm shall not be necessary.

---

[1] This paragraph is modified by La.R.S. 38:225(A)(1)(c), which allows for approval of structures or objects on the levee when a permit or letter of no objection is obtained from the levee district or "the appropriate governing authority where no levee district exists."

Mr. Weekly asserts that Plaintiffs failed to carry their burden in proving that he violated the above statute. His argument is two-fold. First, he claims Plaintiffs failed to prove that the "earthen berm"[2] was the levee that they sought to protect. Second, Mr. Weekly claims Plaintiffs failed to prove that both his utility pole and camper are within fifteen feet of the levee, as Plaintiffs presented no evidence regarding the location of the levee in relation to Mr. Weekly's property.

At the evidentiary hearing, Plaintiffs had Rhonda Richards, Assistant Secretary/Treasurer of the Police Jury, testify as to business records of the Police Jury. Through her testimony, Police Jury meeting minutes from September 8, 1960, were introduced and admitted into evidence (Exhibit A), as were letters regarding the Drainage District's work on the Lake Arthur canal in 1987 and 1988 (Exhibit B).

Larry Lyons, President of Broadmore Drainage, also testified. He testified that he has worked for the Drainage District for forty years. Looking at Exhibit A, the 1960's Police Jury minutes, he testified that the document discusses the project to create the Lake Arthur canal, which is now a part of the Drainage District. Within the district the canal is designated as Lateral 1. Exhibit B discussed a loan from the Police Jury to the Drainage District, which it received, and received approval from the DOTD to undertake work on the canals and levees.

Mr. Lyons further considered Exhibit C, a September 2020 letter from District Attorney Michael Cassidy to Mr. Weekly telling him he could not build on or near the levee and testified that the letter was written at the request of the Drainage District. Mr. Lyons then reviewed the photographs labeled Exhibit D, which consisted of the utility pole and mobile home/camp. Mr. Lyons testified that the

---

[2] "Earthen berm" is the phrase adopted by Mr. Weekly to refer to the area that Plaintiffs call the "levee."

photographs are accurate depictions of the location of both in relation to the levee. Mr. Lyons explained that the utility pole is on the levee itself, but that the camp is now raised several feet and has a front porch built onto it. While the court would not permit Mr. Lyons to testify as to any kind of measurement, Mr. Lyons testified that the front porch is on the levee itself, and then clarified that "the whole building is on the levee." Mr. Lyons also disagreed that Mr. Weekly "built up" the levee and asserted Mr. Weekly only added maybe two inches of sand to the levee after Mr. Weekly first dug up a portion of the levee. Specifically:

> Q.   . . .   opposing counsel has said that we can't really determine where . . . the levee is because Mr. Weekly has put additional dirt. Is that true?
>
> . . . .
>
> A.     No, that's not true. I mean, you can see the levee. You can tell - - what he did he dug across the levee. If we'd have had a flood then, we'd been in a nine-yard bind. That levee would have broke because he cut our levee. You don't ever cut a protection levee.
>
> Q.     And if you go to the second page, is that the cut you're - - you're talking about?
>
> A.     Yeah, and he put a - - he put a wire through it.

On cross-examination, Mr. Lyons continued:

> Q.     Is there any way you can definitely tell me where the levee is on here - -
>
> A.     Yes.
>
> Q.     - - and it's not potentially dirt that my client's paid to put on - - on this property?
>
> . . . .
>
> Q.     Is there any way that you can tell me where the levee is not counting the dirt that my client put on his property to build it up?
>
> A.     Well, the only dirt he put on the property is what he just dug up. That's a track hoe digging a trench through there.

. . . .

Q.　- - this area right here (indicating) that's this flat area that is truckloads of dirt that my client has brought in which I also have receipts for the dirt work that he had done starting back 2020, '21.

A.　. . . He went in and put a culvert to cross from the road, which he wasn't supposed to do, and then he put some sand over the top to fill in that particular pipe, and the excess he pushed over the levee right here (indicating). But there's only about an inch or two of sand that covers that - - that levee. If you notice the grass right here (indicating), that is the depth - - that's the depth of our levee right there (indicating). And if you notice where the sand is over here (indicating), it's only about an inch or two of sand that's just covering basically the grass.

Q.　And how would you be able to tell that from this picture - -

. . . .

A.　- - I can tell it by I went out there and looked at it.

Mr. Lyons further explained where the levee exists:

A.　That is the whole levee right there, and then it slants on both sides. But any time - - where his building is[,] is part of the levee. You don't build a levee straight up, all right. You got to have a slope on it. If you got a 50-foot top, you got a 100-foot bottom. That is part of the levee.

Now, he didn't build up something on the levee except for this right here (indicating). He put that one or two inches. That big pile of dirt is where he's cutting through our levee which he shouldn't have been doing. . . .

. . . .

Q.　And how can you show us where the levee is?

A.　Because I can see the slope, and I can see the top of the levee.

Q.　Even after the fact that my client put dirt on the levee and built it - -

. . . .

Q.　- - that whole area up right there?

A. He didn't build the whole area up.

Thereafter, Mr. Lyons testified that the building permit obtained by Mr. Weekly was only a permit for the building, not a permit to have anything done on the levee. Mr. Lyons also testified regarding how the levee construction was originally done mainly on the East side, because the other side was swamp. Thus, the levee construction began at the lake and came inland, "approximately three-quarters of a mile[,]" although a specific amount of feet was indicated in Exhibit B, which Mr. Lyons believes is approximately the location of the current pump station.

Mr. Weekly then testified. During his testimony, Mr. Weekly explained that he purchased the property as an investment with the intent of placing tiny homes on it to be rented. He testified that he obtained a permit from the town for a utility pole and then Entergy came in, told him where to put the pole, and after he installed the pole, Entergy tied it in. He testified that he lined the pole up with one on "their" property that is located near "their" pump and feeds the town's pavilion and boat docks. Thereafter, Mr. Weekly purchased the first "tiny home" which was a camper with registration, title, and which could have a license on it.

Regarding building up the levee, Mr. Weekly testified that he was in contact with a member of the Drainage District who assured him it was okay with the district to build up the side of the canal with dirt loads. He claims that he built up the levee around the utility pole by about two or three feet.

Later, he received a letter that the camper had to abide by dwelling rules. He made all the changes stated in the letter and the town inspected the home and told him he made the necessary changes. The infractions were discussed with the town council, the mayor, and the Police Jury. The location of the building was not discussed during the infraction meeting. To this end, Mr. Weekly admits he only

8

received permits from the Police Jury who eventually approved the building, issuing building inspection and construction permits. He also admits that, despite receiving a letter in 2020 from the Drainage District advising him he could not build within 100 feet of the levee, he never obtained any permit or waiver from the Drainage District. Mr. Weekly admits that he received this letter "about the time [the building] got there. That's why they served that."

As discussed above, evidence was also admitted at the hearing, which included the 1960 Police Jury Meeting Minutes where the Police Jury approved of works, including the excavation of a "drainage and navigation canal from the western edge of the town [of Lake Arthur] to the lake" be conducted by the Department of Public Works of the State and that after the work concluded, the Police Jury would "assume responsibility for the maintenance and upkeep of these improvements[.]" (Exhibit A). A 1987 letter from the Jefferson Davis Parish Policy Jury to Broadmore Drainage District was admitted, which detailed approving a requested loan for $11,000.00 to restore "0.7 miles of Lake Arthur Canal lateral 1 and L-1B." (Exhibit B). Exhibit C consists of a September 2020 letter from Michael Cassidy to Mr. Weekly informing him that items cannot be placed within 100 feet of either side of the Monlezun Canal and that the Town of Lake Arthur would be instructed not to issue any permits for construction within that area. Exhibit D consists of photographs of a utility pole, dirt, and a mobile home. The February 2023 letter to Mr. Weekly from Broadmore Drainage District, entitled "Notice to Remove Prohibited Mobile Home and Utility Pole from Levee[,]" was admitted as Exhibit E. Exhibit F consists of two photos of the mobile home, taken further away from those in Exhibit D. The Lake Arthur permit applications, one of which states

"This is not a permit for construction[,]" and building permit obtained with the Town of Lake Arthur, were admitted as Exhibits G and H.

After considering the above, the trial court made factual determinations that Plaintiffs carried their burden in proving their entitlement to a mandatory injunction. The trial court reported in its Reasons for Ruling:

> The canal and levee were created by the Louisiana Department of Public Works, with authorization and in conjunction with the Police Jury, prior to the creation of the drainage district. The district has been responsible for maintaining the canal and levee since the district's creation in 1982. In 2019, WEEKLY purchased the property, and despite objections by the drainage district, the defendant personally installed a utility pole into the center of the levee and installed a mobile home within fifteen (15) feet of the levee.

The trial court specifically found that the "utility pole is clearly installed on the levee itself" and was "placed there without a permit or permission of the Drainage District." The trial court further found that Mr. Weekly "moved his mobile home to [the] foot of the levee" despite receiving notice that he "would not be permitted to place items on or near the levee" and Lake Arthur would be advised "not to issue any permits for construction within 100 feet of the canal."

The trial court observed the witnesses, made credibility determinations, and reviewed the documents and photographs admitted into evidence. Based on the above, we cannot say that the trial court committed manifest error in finding that the location of the utility pole and Mr. Weekly's mobile home/camper violated La.R.S. 38:225. Thus, we find no error in the trial court's grant of a mandatory injunction, requiring Mr. Weekly to move the utility pole and mobile home/camper and enjoining Mr. Weekly from installing or placing any obstructions on or within fifteen feet (15′) of the foot of the levee. Although the statute provides that a person may

obtain permission to drive a pile on a levee, Mr. Weekly did not and has not, based on the record, exercised that option. We find no merit to this assignment of error.

Assignment of Error Two:

In his second assignment of error, Mr. Weekly asserts that the judgment is not proper because it does not describe with particularity the levee as required by La.Code Civ.P. arts. 1919 and 2089. Those articles both address judgments affecting title to immovable property. Specifically, La.Code Civ.P. art. 1919 states, "All final judgments which affect title to immovable property shall describe the immovable property affected with particularity. This article does not apply to judgments in succession proceedings recognizing heirs or legatees and sending them into possession." Similarly, La.Code Civ.P. art. 2089 states, "All judgments and decrees which affect title to immovable property shall describe with particularity the immovable property affected."

Mr. Weekly asserts that the immovable property affected by the judgment herein is the levee, which is not and allegedly cannot be described with particularity because no description or specifications regarding the levee were entered into evidence at the hearing.

Respectfully, we disagree that these articles are applicable in this case as the issue being resolved in this lawsuit is whether Mr. Weekly, the landowner, commenced acts on his property in violation of a statute. In fact, the Drainage District was not required to seek judicial interference, as La.R.S. 38:225 authorizes it to remove obstructions. La.R.S. 38:225(B); *See also Hathorn v. Bd. of Comm'ns of Red River*, 218 So.2d 335 (La.App. 3 Cir. 1969). Thus, we find no merit to this assignment of error.

11

**DECREE:**

For the reasons set forth above, we affirm the trial court's May 24, 2023 Judgment, which granted a mandatory injunction in favor of Broadmore Drainage District & Jefferson Davis Parish Police Jury, Plaintiffs-Appellees. Costs of this appeal are assessed to Appellant, Keith Weekly.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2–16.3.